STATE of Tennessee, Appellee,

v.

Annette WHITE, a/k/a Annette Watson, a/k/a Annette Morgan, Appellant.

Court of Criminal Appeals of Tennessee, at Knoxville.

June 25, 1996.

John P. Valliant, Jr., Paul Hensley, Knoxville, for Appellant.

113

Charles W. Burson, Attorney General and Reporter, Eugene J. Honea, Asst. Attorney General, Nashville, Charles Hawk, District Attorney General, D. Roger Delp, Asst. District Attorney General, Kingston, for Appellee.

## OPINION

PEAY, Judge.

The present case involves an appeal of a certified question of law after the entry of guilty pleas pursuant to Tenn.R.Crim.P. 37(b)(2)(i). We find that the defendant's issue on appeal lacks merit, and we therefore affirm the judgment of the trial court.

This appeal represents a consolidated case arising from two indictments charging the defendant with a total of nineteen counts of embezzlement, two counts of forgery, one count of fraudulent breach of trust, four counts of obtaining property by false pretenses, and eighteen counts of making false entries in bookkeeping records. Prior to trial, the defendant moved to dismiss all counts on the basis that they had been brought after the expiration of the applicable statutes of limitation. After a lengthy hearing, the trial court denied the motion, finding that the State proved that the defendant had concealed the crimes, thereby tolling the statutes of limitation. In the wake of the trial court's ruling, the defendant entered guilty pleas to eighteen counts of embezzlement, three counts of making false entries in bookkeeping records, one count of forgery, and one count of obtaining property by false pretenses, but explicitly reserved the question of whether the State had proved concealment so as to toll the statutes of limitation.[1] The trial court sentenced the defendant as follows:

| | |
|---|---|
| seven counts of embezzlement | - four years each, all concurrent |
| eleven counts of embezzlement | - two years each, all concurrent |
| three counts of false bookkeeping | - three years each, all concurrent |
| one count of false pretenses | - four years, concurrent |
| one count of forgery | - two years, consecutive. |

The effective sentence was six years, with all to be served on probation. The trial court also ordered the defendant to pay thirty thousand dollars ($30,000) in restitution. In this appeal, the defendant contends that the State did not sufficiently prove concealment to toll the statutes of limitation. She claims that the evidence brought forth at the hearing on the defendant's motion to dismiss reveals that the principal victim of the crimes was aware of or, upon the exercise of reasonable diligence, should have been aware of the criminal activity of the defendant.

Although the present case involves little more than a hearing on a motion to dismiss and a guilty plea proceeding, the record is quite lengthy. We shall endeavor to summarize the pertinent testimony and evidence as briefly as possible. The defendant was employed by Loudon County Memorial Gardens ("Loudon Memorial"), a funeral home business, during the relevant time period set forth in the indictments, namely January 1984 to September 1987. During most of that time the owners of the business, Terry McGill and Francis Streiffert, relied heavily upon the defendant for the daily operation of the business. She was an effective salesperson, handled the accounts of the business, and maintained bookkeeping records. At no time were the owners displeased with her performance of those duties. More importantly, according to testimony accredited by the trial court, at no time did the owners or the management of Loudon Memorial suspect the defendant of misappropriating funds. Furthermore, the record reveals that the defendant's general reputation in the community for truthfulness and honesty was excellent.

Prior to 1993, Loudon Memorial had conducted regular reviews of its financial rec-

---

1. The record contains judgments of conviction on count nineteen and count twenty-two of the August 1993 indictment (case number 8556). Nowhere in the record does it indicate that the defendant actually pled guilty to those counts. Those two counts are not mentioned in the guilty plea hearing and they do not appear in the list of counts included in the defendant's guilty plea form. We suggest that this matter be taken up with the trial court so that a correction may be made if necessary.

ords and had discovered no evidence of misappropriation. Loudon Memorial's financial records had been audited by the State, and they regularly sent financial information to an accounting firm. No evidence of misappropriation was discovered during any of these reviews as well. Moreover, no customers of Loudon Memorial complained to the owners or to management of any wrongdoing with regard to their accounts.

In January of 1993, however, Renee Anderson, the office manager of Loudon Memorial from September 1987 to that time, discovered circumstances which led her to believe that the defendant had misappropriated funds. The Shockley family came to Loudon Memorial to purchase cemetery lots already owned by the Pipkin family. The Pipkin family agreed and, in return, received new lots from Loudon Memorial. Upon receiving the deeds to the new lots, Pipkin discovered that he already owned a deed to the new lot which he had just received. Accordingly, he brought all of his records to Anderson at Loudon Memorial to resolve the matter. Anderson initially suspected a simple mistake in Loudon Memorial's record keeping. Upon further review of Pipkin's documentation, however, she discovered that Pipkin possessed canceled checks which had been made payable to the defendant personally rather than to Loudon Memorial. Pipkin also had an original Loudon Memorial receipt made out by the defendant. When Anderson checked Loudon Memorial's records, the entire page of carbon duplicate receipts where Pipkin's receipt should have been located was missing.

These circumstances prompted Anderson to undertake a meticulous investigation of Loudon Memorial's financial records. She contacted other deed owners directly and laboriously researched every aspect of the company's files. Through this painstaking research, Anderson discovered forged documents, altered records and more missing pages of carbon duplicate receipts. After approximately four months of exhaustive review of company records, Anderson had discovered the evidence which led to the defendant's indictments in the present case.

The indictments were returned in August and December of 1993. The time period covered by the criminal acts alleged in the indictments ranged from approximately January 1984 to September 1987. The longest period of limitation for the offenses charged in the indictments was four years. *See* T.C.A. § 40–2–101(b)(3). Obviously, then, prosecution was commenced after the expiration of the applicable statutes of limitation. In the indictments, however, the State pled that the defendant had concealed the evidence of her criminal acts so as to toll the statutes of limitation pursuant to T.C.A. § 40–2–103. We agree with the defendant that when there is a prosecution after the expiration of the statute of limitation, the indictment or presentment must contain allegations that certain specific facts tolled the statutory period, and proof must support the allegations. *See State v. Davidson,* 816 S.W.2d 316, 318 (Tenn.1991); *State v. Comstock,* 205 Tenn. 389, 326 S.W.2d 669, 671 (1959); *Morgan v. State,* 847 S.W.2d 538, 542 (Tenn.Crim.App.1992); *State v. Tidwell,* 775 S.W.2d 379, 389 (Tenn.Crim.App.1989). We further agree with the defendant that exceptions which extend the limitation period, such as the provision tolling the statute during periods of concealment, should be construed strictly against the State. *See State v. Henry,* 834 S.W.2d 273, 276 (Tenn.1992).

In her issue on appeal, the defendant contends that the State did not sufficiently prove concealment because Loudon Memorial knew or should have known of her misappropriations. With regard to her contention that Loudon Memorial actually knew of her misappropriations, the defendant presented testimony at the hearing on her motion to dismiss that the owners of Loudon Memorial, McGill and Streiffert, suspected her of writing false contracts and taking money from the company's petty cash fund. Both McGill and Streiffert testified that they had no knowledge that the defendant was misappropriating funds. Furthermore, Leon Bright, another individual who had worked for McGill, refuted testimony presented by the defendant that McGill knew of or suspected the defendant's wrongdoing.

■ At the conclusion of the hearing, the trial court specifically found the testimony of the owners regarding their lack of knowledge of the defendant's misappropriations to be credible and adopted it as fact. The findings of a trial judge on factual issues have the weight of a jury verdict, and these findings will not be set aside unless the evidence preponderates against them. *See State v. Tate*, 615 S.W.2d 161, 162 (Tenn. Crim.App.1981). From our review of the entire record, we conclude that the evidence does not preponderate against the trial court's finding. The trial judge was in the best position to evaluate the credibility of the witnesses, and he found the testimony of the owners to be credible rather than the testimony of the defendant's witnesses. The defendant's contention that Loudon Memorial actually knew of her misappropriations is therefore without merit.

■ The defendant, however, also argues that Loudon Memorial should have known of her misappropriations. Her contention is basically that, if Anderson was able to discover the misappropriations through her review of the company records in 1993, then Loudon Memorial should have been able to discover them through their regular reviews of the records prior to that time. In support of that argument, the defendant makes much of Streiffert's testimony that, after the fact, he now supposes he should have discovered the discrepancies found in the company records. In addition, the defendant stresses Anderson's testimony that the monetary figure discrepancies forming the basis for several counts of the indictments were obvious and would have been discovered in one of Loudon Memorial's regular reviews of its financial records.

The defendant places far too much emphasis on these statements. In the first place, this testimony came in hindsight after discovery of extensive, intricate evidence which led to the defendant's indictment on forty-four counts of financial wrongdoing. More importantly, however, the discovery of discrepancies in the company's financial records does not by itself lead to the conclusion or suspicion that the defendant was misappropriating funds. Of course, there can be many explanations of discrepancies in financial records, from lost documents to transposed monetary figures. In fact, when Pipkin came forward with his duplicate deed, the keystone in the discovery of the defendant's misappropriations, Anderson originally suspected a simple mistake, such as a filing error or a lost record. It was not until Anderson saw the canceled checks made payable to the defendant personally rather than to Loudon Memorial that she began to suspect wrongdoing on the defendant's part. That discovery led to Anderson's meticulous review of Loudon Memorial's financial records with an eye toward possible misappropriation rather than simple mistaken discrepancies. Anderson's thorough review included directly contacting customers concerning their records, a procedure which would not have been undertaken in Loudon Memorial's routine reviews of its financial records. As a result, we conclude that the record fully supports the trial court's finding that Loudon Memorial, in the exercise of reasonable diligence, could not have discovered the defendant's misappropriations because of her concealment of her wrongdoing through the alteration and destruction of financial records.

The defendant endeavors to compare her case to that of *State v. Billy B. Vineyard*, C.C.A. No. 1030, Knox County, 1986 WL 7929 (Tenn.Crim.App. filed July 18, 1986, at Knoxville). Yet as the State points out, *Vineyard* is markedly different factually and readily distinguishable from the present case. Vineyard was convicted of fraudulent breach of trust for misappropriating funds in his management of securities entrusted to him by Minnie Weinstein. Although prosecution was brought after the expiration of the applicable statute of limitation, the State argued that Vineyard had concealed his crime, thereby tolling the statutory period, by sending Weinstein personal checks purported to be the dividends from her investments. A panel of this Court rejected the State's argument, finding that the record did not support the allegation in the presentment that the defendant had concealed the crime for a period long enough to bring the prosecution within the statute of limitation. The Court relied upon the facts that Weinstein had been receiving personal checks from the defendant

rather than checks from the investment company at which her trading account was located, that several of these personal checks had been returned for insufficient funds, and that monthly statements from the investment company clearly indicated a declining cash balance and no stocks or bonds in her trading account. The Court reasoned that these circumstances alerted Weinstein that her investment account was virtually depleted in contradiction to the defendant's claims to the contrary. As a result, the Court concluded that Weinstein should have taken steps to investigate the condition of her financial arrangements with the defendant before the date alleged on the presentment as the end of the defendant's concealment period. The defendant's prosecution was therefore barred as commencing after the expiration of the applicable statute of limitation. *See State v. Billy B. Vineyard*, C.C.A. No. 1030, Knox County, 1986 WL 7929 (Tenn.Crim.App. filed July 18, 1986, at Knoxville).

In the present case, however, there was no simple indication of possible misappropriation as there was in *Vineyard*. The accounting and bookkeeping procedures used by Loudon Memorial are quite complex and the description by Anderson of how she discovered the defendant's misappropriations in the company's financial records occupies approximately two hundred pages of testimony from the transcript of the hearing on the motion to dismiss. It is clear from the record that the defendant went to great lengths to conceal her misappropriations, from altering records to forging documents to destroying records. These circumstances stand in stark contrast to *Vineyard*, in which the victim, Weinstein, received a simple monthly statement clearly revealing the declining balance in her investment account managed by Vineyard. Accordingly, the defendant's comparison of her situation to *Vineyard* is misplaced.

For the reasons set forth in the foregoing discussion, we conclude that the record clearly supports the trial court's finding that the State sufficiently proved the defendant had concealed the evidence of her misappropriations, thereby tolling the applicable statutes of limitation. We therefore affirm the defendant's convictions.

JONES, P.J., and WELLES, J., concur.