**Roger Morgan WALL, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 13–02–636–CR.

Court of Appeals of Texas, Corpus Christi–Edinburg.

Aug. 19, 2004.

Rehearing Overruled Oct. 7, 2004.

---

Angela Cameron, Mary Connealy Acosta, Houston, for appellant.

William J. Delmore, III, Amanda Peters, Assistant District Attorneys, Houston, for appellee.

Before Justices YAÑEZ, RODRIGUEZ, and GARZA.

## OPINION

Opinion by Justice YAÑEZ.

Appellant, Roger M. Wall, was convicted by a jury of aggravated assault, enhanced with two prior felony convictions. The jury assessed punishment at confinement for thirty-five years. By two issues, appellant challenges his conviction for aggravated assault. We affirm.

The record contains the trial court's certification that the case is not a plea-bargain case, and the defendant has the right of appeal. *See* Tex.R.App. P. 25.2(a)(2).

## I. BACKGROUND

On December 31, 2001, a group of men gathered at an abandoned gas station to celebrate the approach of the new year. Appellant, who sometimes drank with these men, wandered over to visit with them. One of the victims of the assault, Donald Norman, later provided a statement to police detailing the events. According to Norman, appellant began saying how much he hated "niggers and Mexicans." Norman responded that he loved all races and that he served his country for all races. Appellant retorted angrily that Norman was a "nigger lover," and then walked a few feet away to pick up a wooden board.

Appellant then attacked several individuals with the board, causing all to be injured, two so severely that hospitalization was required. Norman was one of the victims requiring hospitalization. While at the hospital, Deputy Luis G. Figueroa questioned Norman about the events.

Norman answered Figueroa's questions and identified appellant as the perpetrator of the assault.

Norman was unavailable to testify at trial. Instead, the State called Deputy Figueroa to testify as to what Norman disclosed to him in response to Figueroa's questioning at the hospital. Appellant objected to the admission of this evidence claiming that it was inadmissible hearsay. However, the trial court allowed Norman's statements to be admitted into evidence under the excited utterance exception to the hearsay rule. *See* Tex.R. Evid. 803(2).

## II. IMPROPER CLOSING ARGUMENT

By his first issue, appellant contends that the trial court erred in overruling his objection to an improper jury argument. Specifically, appellant contends that the prosecutor's closing argument during the punishment phase of the trial was neither a proper plea for law enforcement, nor a reasonable deduction from the evidence.

The standard of review for improper jury argument is to review the record in its entirety to determine whether any erroneous statements were made, and if so, whether they were so prejudicial as to deprive the appellant of a fair and impartial trial. *Willis v. State*, 785 S.W.2d 378, 385 (Tex.Crim.App.1989). The failure to preserve error by making a timely objection each time the evidence is offered forfeits the right to complain. Tex.R.App. P. 33.1. An objection is timely when it is made before the evidence is admitted or as soon as the objectionable nature of the evidence becomes apparent. *Ethington v. State*, 819 S.W.2d 854, 858 (Tex.Crim.App. 1991).

Here, appellant forfeited his right to complain by failing to timely object to the

prosecutor's statements. The prosecutor made the following two statements in closing arguments of the punishment phase of trial:

> [Prosecutor]: I'm going to submit to you that *the only thing that is going to stop someone from getting killed possibly in the future by this man who is getting more serious instead of less, is if you give him life.* That is the only thing that is going to stop him.
>
> . . .
>
> He's getting more serious. We go from the misdemeanor assaults to the injury to a child, then to this aggravated assault. What is next? *Literally, does he have to murder somebody for us to decide that he does not need to be out in society?* He will do it again. And the question is: Are you going to let him? Are you going to let him do it again? And when?

(emphasis added)

Appellant did not object to either statement made by the prosecutor. Appellant did, however, object after a similar statement made at the end of the prosecutor's closing argument. In that final statement, the prosecutor said, "[s]o, what I'm asking you, what I'm begging you, we've got to take him off the street because anything short of life will not stop him. *And if you don't give him life, he might take a life.*" (emphasis added). Thus, on three occasions during closing argument, the prosecutor argued that appellant should receive a life sentence because of his propensity for violence and that he might one day commit murder. Appellant failed to object the first two times such statements were offered. When appellant finally did object, it was at the end of the prosecutor's closing argument. It is unclear as to whether the objection was directed to the entire closing argument or solely to the final statement. In either case, we conclude

appellant's late objection was untimely and that any error was not preserved. *See* TEX.R.APP. P. 33.1. Appellant' first issue is overruled.

## III. ADMISSIBILITY OF WITNESS NORMAN'S STATEMENT UNDER THE CONFRONTATION CLAUSE

In his second issue, appellant challenges the admission of Norman's statement as a violation of his right to confrontation. Appellant has sufficiently preserved his confrontation complaint for review.

### *The Federal Constitutional Right of Confrontation*

Appellant contends that his Sixth Amendment right to confrontation under the United States Constitution as well as under the Texas Constitution were violated. However, because appellant did not brief his claims separately, we assume he claims no greater protection under the state constitution than that provided by the federal constitution. *Lagrone v. State,* 942 S.W.2d 602, 614 (Tex.Crim.App.1997), cert. denied, 522 U.S. 917, 118 S.Ct. 305, 139 L.Ed.2d 235 (1997); *see Hale v. State,* 139 S.W.3d 418 (Tex.App.-Ft. Worth, 2004, no pet. h.) (designated for publication). Thus, we only apply the *Sixth Amendment* of the United States Constitution.

The fundamental issue presented in this appeal is whether a non-testifying witness's statement made to a police officer during investigation of a crime and incriminating the defendant, is admissible against the defendant. We review the trial court's ruling *de novo. See Muttoni v. State,* 25 S.W.3d 300, 304 (Tex.App.-Austin 2000, no pet.).

At the time of appellant's trial, a Sixth Amendment challenge to the admissibility of an out-of-court statement against the

accused was governed by *Ohio v. Roberts,* 448 U.S. 56, 66, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980); *see Brooks v. State,* 132 S.W.3d 702, 705 (Tex.App.-Dallas 2004, no pet. h.). In *Roberts,* the Supreme Court discussed the confrontation issues raised by hearsay and directed that the following requirements be met before an out-of-court statement could be admitted:

> In sum, when a hearsay declarant is not present for cross-examination at trial, the *Confrontation Clause* normally requires a showing that he is unavailable. Even then, his statement is admissible only if it bears adequate "indicia of reliability." Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness.

*Roberts,* 448 U.S. at 66, 100 S.Ct. 2531.

Thus, after *Roberts,* to determine the admissibility of a statement subject to a confrontation challenge, we tested a statement's reliability in one of two ways: first, whether there was a firmly-rooted hearsay exception; or second, whether there were particularized guarantees of trustworthiness, such that adversarial testing would be expected to add little, if anything, to the statement's reliability. *See id.*

### The Crawford Standard

While the instant case was pending before this Court, the Supreme Court overruled *Roberts* and set out a new test in *Crawford v. Washington,* —— U.S. ——, ——, 124 S.Ct. 1354, 1369, 158 L.Ed.2d 177 (2004). Justice Scalia, writing for the Court, provided a historical overview of the principle of confrontation from ancient Roman times up through the adoption of the Sixth Amendment. *See id.* at 1359–63. *Crawford* concludes that the *Roberts* test represents a departure from the original intent of the framers of the Constitution. *Id.* Specifically, the Court determined that the *Roberts* test's adherence to a general reliability exception to the confrontation clause was misplaced. *Id.* at 1369. Instead, the court noted:

> admitting statements deemed reliable by a judge is fundamentally at odds with the right of confrontation. To be sure, the Clause's ultimate goal is to ensure reliability of evidence, but it is a procedural rather than a substantive guarantee. It commands not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross examination. The Clause thus reflects a judgment, not only about the desirability of reliable evidence (a point on which there could be little dissent), but about how reliability can best be determined.

*Id.* at 1370.

We turn now to the test set out in *Crawford,* which was recently applied by our sister court in *Brooks,* 132 S.W.3d at 707. As the *Brooks* court noted:

> The threshold question imposed by *Crawford* is whether the proffered out-of-court statement is "testimonial" in nature. Although the Court purposefully avoids drawing a comprehensive definition of the term, it identifies certain categories of out-of-court statements that definitely fall under the heading of testimonial statements. These categories include prior sworn testimony from a preliminary hearing, a grand jury proceeding, or an earlier trial. They also include police interrogations. According to *Crawford,* these types of statements bear the "closest kinship" to the abuses at which the *Confrontation Clause* was directed.

*Id.* (citations omitted).

Once a statement is determined to be "testimonial," the Sixth Amendment de-

mands that the witness be unavailable *and* that the defendant had a prior opportunity for cross-examination. *Crawford,* 124 S.Ct. at 1374 (emphasis added).

### *"Testimonial" Statements Under Crawford*

We therefore first address whether witness Norman's out-of-court statement is "testimonial" in nature. Although the Supreme Court declined to define "testimonial," the Court did outline certain categories of statements, including police interrogation, that definitely qualify as testimonial statements. *Id.* at 1364–65.

We note that in *Cassidy v. State,* — S.W.3d ——, ——, No. 03–03–00098–CR, 2004 WL 1114483, at *3, 2004 Tex.App. LEXIS 4519, at *10 (Tex.App.-Austin May 20, 2004, no pet.) (designated for publication), our sister court addressed the issue of what constitutes a "testimonial" statement made during "police interrogation." *See id.* With facts almost identical to this case, the *Cassidy* court held that an interview of a witness by a police officer at a hospital, shortly after an assault, did not constitute interrogation as the term is used in *Crawford.* Therefore, the court held that the statements were outside the scope of the Sixth Amendment. *Id.* We respectfully disagree.

█ The *Crawford* court specifically stated that its use of the term "interrogation" was "in its colloquial, rather than any technical legal, sense." *Crawford,* 124 S.Ct. at 1365, n. 4. The Court stated specifically, however, that a recorded statement "knowingly given in response to structured police questioning, qualifies [as interrogation] under any conceivable definition." *Id.* We conclude, therefore, that a police officer conducting an interview of a witness at a hospital is such "structured police questioning," and is thus an "interrogation" under the holding in *Crawford.*

*See id.* The *Crawford* court further held that "[s]tatements taken by police officers in the course of interrogations are also testimonial under even a narrow standard." *See id.* at 1364. To hold otherwise ignores the central holding in *Crawford.* As the Court noted, "[w]here testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation." *See id.* at 1374.

### *Application of the Law to the Facts*

█ Here, witness Norman's statement was given in response to investigative questioning by Deputy Figueroa. As we noted above, we conclude that this is a "police interrogation" under the definition set forth in *Crawford.* *See id.* at 1364–65. Thus, we hold that Norman's out-of-court statement is "testimonial" in nature as a matter of law. *See id.*

█ After determining that the statement is "testimonial," we next address whether Norman was available to testify, and if not, whether the appellant was provided with a prior opportunity for cross-examination. Norman was not available to testify at trial, and appellant was provided with no prior opportunity for cross-examination. Thus, we hold that admission of Norman's statement violated appellant's right to confrontation under the Sixth Amendment of the United States Constitution. *See id.* at 1374.

### IV. HARM ANALYSIS

█ Once constitutional error has been identified, the judgment of conviction must be reversed unless it is determined beyond a reasonable doubt that the error did not contribute to appellant's conviction. *See Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705, (1967);

TEX.R.APP. P. 44.2(a);[1] *Mendez v. State,* 56 S.W.3d 880, 893 (Tex.App.-Austin 2001, pet ref'd.). Essentially, we must "calculate, as nearly as possible, the probable impact of the error on the jury in light of the other evidence." *McCarthy v. State,* 65 S.W.3d 47, 56 (Tex.Crim.App.2001). "If there is a reasonable likelihood that the error materially affected the jury's deliberations, then the error is not harmless beyond a reasonable doubt." *Brooks,* 132 S.W.3d at 708. Moreover, "[t]he fact that the legally admitted evidence is sufficient to support the verdict does not demonstrate the error was harmless." *Id.* "However, the error may be harmless when the lawfully admitted evidence of the defendant's guilt is overwhelming." *Id.*

▇▇▇ In determining harm associated with inability to confront, courts should consider factors including whether the testimony was cumulative, the presence or absence of corroboration, and the overall strength of the prosecution's case. *Id.* at 711 (citing *Delaware v. Van Arsdall,* 475 U.S. 673, 684, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986)).

Appellant was convicted of aggravated assault. Under the Texas Penal Code, assault occurs if "a person intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative." TEX. PEN.CODE ANN. § 22.01(a)(3) (Vernon 2003). An assault is elevated to the offense of aggravated assault, among other circumstances, when the assault "causes serious bodily injury to another." *Id.* § 22.02(a)(1).

The question then is whether, disregarding Norman's statement, the lawfully admitted evidence overwhelmingly proves the defendant's guilt. *See Brooks,* 132 S.W.3d at 708. We conclude that it does. The State presented three witnesses, each of whom testified that the defendant, unprovoked, struck several victims with a club/stick/board. First, Cinellia Fry testified that while she was stopped at a red light adjacent to the scene of the crime, she saw appellant grab a stick and viciously attack several unarmed men. Second, Jerry Hunter testified that he was sitting in his car with his family at the McDonald's across the street from the scene, approximately 100 to 150 feet away. Hunter stated that he saw some men arguing, and that the appellant walked over to a pick-up truck, picked up a club, and attacked several men. Finally, Samuel Pierce, one of the victims of the attack and an acquaintance of appellant, testified that he was assaulted, identified his attacker as appellant, and stated that he was hit several times with a board.

The defense presented three witnesses. Their testimony detailed the events after the assault, when they arrived at the abandoned gas station. None of the three testified as to what actually occurred between the victims and appellant.

Thus, of the witnesses testifying at trial, those who actually witnessed the crime testified that appellant was the attacker. Moreover, one of those witnesses was an acquaintance of appellant and identified appellant as the attacker. The evidence overwhelmingly establishes appellant's guilt, even disregarding the erroneously

---

**1.** We note that although not addressed directly in *Crawford,* the Court implicitly recognized that violations of the Sixth Amendment right to confrontation are subject to harmless-error analysis. *See Crawford,* 124 S.Ct. 1354, 1378 (Rehnquist, C.J. concurring); *see also Brooks* *v. State,* 132 S.W.3d 702, 707–11 (Tex.App.-Dallas 2004, no pet. h.) (applying harm analysis and concluding that admission of statement of non-testifying co-defendant was harmful error).

admitted evidence. The testimony establishes that appellant intentionally caused physical contact with another that resulted in serious bodily injury, while knowing that the victims would regard the contact as offensive or provocative, as required by the Texas Penal Code. *See* TEX. PEN.CODE ANN. §§ 22.01(a)(3), 22.02(a)(1) (Vernon 2003). Accordingly, we hold that the error committed by the trial court was not harmful, and thus overrule appellant's second issue.

The judgment of the trial court is affirmed.