NUMBER 13-99-809-CR

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI - EDINBURG
___________________________________________________________________

ROGELIO MORENO DENOSO,                                             Appellant,

v.

THE STATE OF TEXAS,                                                      Appellee.
___________________________________________________________________

On appeal from the 370th District Court
of Hidalgo County, Texas.
__________________________________________________________________

O P I N I O N

Before Justices Hinojosa, Yañez, and Rodriguez
Opinion by Justice Rodriguez

         Appellant, Rogelio Moreno Denoso, was indicted on one count of intentionally
and knowingly causing the death of David Chapa Quintero by shooting him with a
firearm.


 Appellant entered a plea of not guilty. Tried to a jury, the charge included
instructions on party and principal theories of criminal responsibility and on the
affirmative defense of duress. The jury found appellant guilty of murder and assessed
punishment at life imprisonment.
         The trial court has certified that this case "is not a plea bargain case, and the
defendant has the right of appeal." See Tex. R. App. P. 25.2(a)(2). By eleven points
of error, appellant complains of the following: (1) the evidence is legally and factually
insufficient to support the verdict; (2) the trial court erred in admitting or excluding
certain evidence including, among other things, a defense witness's testimony,
appellant's statement, the autopsy report and photographs, and extraneous offense
testimony; and (3) the prosecutor engaged in misconduct. We affirm the trial court's
judgment.
I. Facts
         Chapa was last seen leaving a local "hang out" with appellant. According to
appellant, four of their friends asked appellant to pick up Chapa and go for a ride. The
friends directed appellant to drive to the location where Chapa's body was later found. 
There the friends allegedly killed Chapa, shooting him several times. Appellant
admitted discussing killing Chapa with the others, going to the murder site earlier in
the day, driving Chapa to that site, being present when the murder occurred, and
watching what was happening. Appellant stated, however, he did not participate in
the actual shooting. His friends ordered him to help dispose of the body. At trial,
appellant asserted the defense of duress.
         Chapa's badly burnt and decomposed body was found in a remote area of
Hidalgo County, Texas. The Hidalgo County Sheriff's Office processed the scene and
recovered several shell casings, some of which matched shell casings found at a
shooting involving appellant and Chapa that occurred three months before Chapa's
murder. The cause of death was determined to be from multiple shotgun wounds and
a gun shot to the head.
II. Sufficiency of the Evidence to Support Verdict on Party Theory
         By his first point of error, appellant contends the evidence is legally and factually
insufficient for a rational juror to find he was a party to the murder. Arguing that the
State's theory of the case was not that appellant directly caused Chapa's death by
shooting him, but that he assisted others in killing Chapa, appellant challenges only the
sufficiency of the evidence as to the State's party theory.
         The State, however, presented evidence on both principal and party theories. 
The jury was charged, without objection, on both theories, and rendered a general
verdict of guilty. Because appellant has chosen not to challenge the sufficiency of the
evidence on the principal theory, he has waived any argument he might have had on
appeal. See Tex. R. App. P. 38.1(e) (brief must state concisely all issues presented for
review); see also id. 38.1(h) (brief must contain clear and concise argument for
contentions made, with appropriate citations to authorities and record). Therefore, we
will uphold the guilty verdict based on the State's principal theory. See Rabbani v.
State, 847 S.W.2d 555, 558 (Tex. Crim. App. 1992); Edwards v. State, 106 S.W.3d
833, 839 (Tex. App.–Dallas 2003, pet. ref'd) (if evidence of guilt is sufficient either
as principal or as party, appellate court must affirm jury's verdict). 
         Nonetheless, even were we to agree with appellant that the State asserted only
a party theory at trial, a rational jury could have concluded that appellant was a party
to the murder. A person commits the offense of murder if he intentionally or
knowingly causes the death of another person. See Tex. Pen. Code Ann. § 19.02
(Vernon 2003). A person is criminally responsible as a party to an offense if he acts
with intent to promote, assist, solicit, direct, aid, or attempts to aid in the commission
of an offense. See id. § 7.02(a)(2). Evidence is sufficient to convict under the law
of parties where the defendant is physically present at the commission of the offense
and encourages its commission by words or other agreement. Ransom v. State, 920
S.W.2d 288, 302 (Tex. Crim. App. 1994). The jury may look to events occurring
before, during, and after the commission of the offense in determining whether the
accused participated as a party. Id. The jury may also rely on actions of the
defendant that show an understanding and a common design to do the prohibited act. 
Id.
A. Legal Sufficiency
         In a legal sufficiency review, we consider all of the evidence in the record in the
light most favorable to the verdict and determine whether, based on that evidence and
reasonable inferences therefrom, a rational jury could have found the accused guilty
of the essential elements of the offense beyond a reasonable doubt. Jackson v.
Virginia, 443 U.S. 307, 319 (1979); Swearingen v. State, 101 S.W.3d 89, 97 (Tex.
Crim. App. 2003). The reviewing court considers all evidence admitted at trial,
whether properly or improperly admitted. Conner v. State, 67 S.W.3d 192, 197 (Tex.
Crim. App. 2001). 
         Considering all of the evidence in the record in the light most favorable to the
verdict, the record established that appellant met with three other men and discussed
killing Chapa. Appellant traveled with the others to the murder site the afternoon
before the crime, brought appellant to the predetermined site, was present during the
murder, helped dispose of Chapa's body, concealed the car after the murder, and
gathered with the others at his house after the murder to continue drinking until the
early morning hours. Appellant's actions before, during, and after the commission of
the offense show an understanding and a common design to do the prohibited act, to
intentionally or knowingly cause Chapa's death. Ransom, 920 S.W.2d at 302. Thus,
we conclude the evidence is legally sufficient to establish that appellant is criminally
responsible as a party to this offense.
B. Factual Sufficiency
         Evidence is factually insufficient only when the evidence as to an element is so
obviously weak as to undermine confidence in the jury's determination, or the proof
of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. 
Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). To review the factual
sufficiency of the evidence, the appellate court must view the evidence in a neutral
light. Id.
         Appellant testified that he did not shoot Chapa. He also testified as to his
affirmative defense of duress. However, reviewing the evidence in a neutral light, it
is clear that the evidence of intent was not so obviously weak as to undermine
confidence in the jury's verdict or greatly outweighed by contrary proof. Id. 
Accordingly, we conclude the evidence is also factually sufficient to support the
verdict under the party theory.
         Appellant's first point of error is overruled.
III. Extraneous Offense
         Appellant contends in his second point of error that the trial court erred in
allowing the State to introduce extraneous offenses into evidence. The offenses
appellant complains of include an attempted murder, prior killings, and other criminal
activities.


 Appellant refers this Court to testimony provided by Theresa Marie Garza,
wife of the victim. She testified about a July 1997 shooting. She also testified that
she heard appellant talking about robbing, kidnapping and torturing people. However,
the record shows that appellant never objected to this evidence on grounds that it was
impermissible extraneous offense evidence. During hearings before the trial court,
defense counsel objected that (1) the attempted murder evidence was the subject of
another indictment, and (2) testimony about appellant's bragging was hearsay. After
overruling defense counsel's hearsay objection, the trial court asked counsel if that
was going to be his only objection. Counsel responded, "That [is the only objection]
I can think of now, Judge." No defense objections were made when Garza
subsequently testified about these topics before the jury. Because appellant's
objections to the trial court do not comport with his complaint on appeal, we overrule
appellant's second point of error. See Guevara v. State, 97 S.W.3d 579, 583 (Tex.
Crim. App. 2003); see also Tex. R. App. P. 33.1(a)(1)(A) (as prerequisite to presenting
complaint for appellate review, record must show complaint was made to trial court
by timely request, objection, or motion that stated grounds for ruling sought). 
IV. Witness Statements
         By his third point of error, appellant contends the trial court erred in allowing
into evidence the content of statements of witnesses who did not testify. Citing
Shaffer v. State, 777 S.W.2d 111 (Tex. Crim. App. 1989), appellant complains that
the trial court erred in admitting this evidence because it was "backdoor hearsay." Id.
at 113. In this case, however, the record does not show that appellant objected to
the complained-of testimony as hearsay. See Tex. R. App. P. 33.1(a)(1)(A). Thus,
appellant waived error, if any, related to the admission of testimony regarding the
statements. See id. We overrule appellant's third point of error.
V. Appellant's Written Statement
         By his fourth point, appellant contends the trial court erred in admitting his
written statement. He argues that the trial court should have suppressed his
statement because it was not freely made and was based on a promise not to
prosecute his wife.



         "A statement of an accused may be used in evidence against him if it appears
that the same was freely and voluntarily made without compulsion or persuasion . .
." Tex. Code Crim. Proc. Ann. art. 38.21 (Vernon 1979). In reviewing the trial court's
ruling on a motion to suppress a statement based on a claim the statement was
involuntary, we give almost total deference to the trial court's determination of
historical facts, especially when the trial court's fact findings are based on an
evaluation of credibility and demeanor. State v. Ross, 32 S.W.3d 853, 856 (Tex.
Crim. App. 2000); Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1977);
Villarreal v. State, 61 S.W.3d 673, 678 (Tex. App.–Corpus Christi 2001, pet. ref'd). 
This Court affords the same amount of deference to the trial court's ruling on
application of law to fact questions, also known as mixed questions of law and fact,
if the resolution of those ultimate questions turns on evaluating credibility and
demeanor. Ross, 32 S.W.3d at 856; Guzman, 955 S.W.2d at 89; Villarreal, 61
S.W.3d at 678. However, questions of law and mixed questions of law and fact that
do not turn on an evaluation of credibility and demeanor are reviewed de novo. Ross,
32 S.W.3d at 856; Guzman, 955 S.W.2d at 89; Villarreal, 61 S.W.3d at 678. We will
sustain the trial court's ruling on a motion to suppress if it is correct on any theory of
the law applicable to the case. Villarreal, 61 S.W.3d at 678.
         Additionally, to the extent appellant is making a federal constitutional claim, 
[s]ubstantive constitutional law prohibits the government from using an
involuntary confession against an accused with the test for voluntariness
being whether the confession is the product "of an essentially free and
unconstrained choice by its maker." Schneckloth v. Bustamonte, 412
U.S. 218, 225, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973); Alvarado v.
State, 912 S.W.2d 199, 211 (Tex. Crim. App. 1995) (statement is
involuntary "only if there was official, coercive conduct of such a nature
that any statement obtained thereby was unlikely to have been the
product of an essentially free and unconstrained choice by its maker"). 

State v. Terrazas, 4 S.W.3d 720, 723-24 (Tex. Crim. App. 1999).
         In accordance with Jackson v. Denno, 378 U.S. 368, 380 (1964), on April 13,
1999, the trial court conducted a pre-trial hearing to determine the voluntariness of
appellant's statement. See Jackson, 378 U.S. at 380; Tex. Code Crim. Proc. Ann. art.
38.22 (Vernon 1979 & Supp. 2004-05); see also Lopez v. State, 384 S.W.2d 345,
348 (Tex. Crim. App. 1964). At a Jackson v. Denno hearing, the trial court is the trier
of fact and the judge of the credibility of the witnesses. State v. Ballard, 987 S.W.2d
889, 891 (Tex. Crim. App. 1999); Miniel v. State, 831 S.W.2d 310, 315 (Tex. Crim.
App. 1992). 
         Following the hearing, the trial court found the statement was made voluntarily
and, pursuant to article 38.22, section 6, of the code of criminal procedure, entered
an order on May 21, 1999, containing its findings of fact and conclusions of law. See
Tex. Code Crim. Proc. Ann. art. 38.22, § 6 (Vernon 1979). At the request of this
Court, the trial court entered a second order on December 9, 2002.
         According to the trial court's findings and our review of the record, Hidalgo
County Sheriff Investigator Esteban Caro testified he took a written statement from
appellant after his arrest. Caro testified that appellant was provided with and
understood his Miranda warnings, see Tex. Code Crim. Proc. Ann. art. 38.22, § 2
(Vernon 1979), and that appellant was not coerced or threatened in any way and was
promised nothing for his statement. He explained that before signing the statement,
appellant made changes to it. Again at trial, Caro testified he did not make any direct
or indirect promises to appellant in exchange for the statement. He denied using
appellant's wife as leverage.
         Sonia Salinas, a secretary at the Hidalgo County Sheriff's office, testified that
she observed appellant signing his statement. Salinas testified appellant was provided
Miranda warnings in Spanish. To her knowledge, appellant had not been threatened
or promised anything in exchange for signing the statement.
         At the suppression hearing and at trial, appellant testified he signed the
statement because Caro told him that things would go well for him and that he would
let his wife go as long as appellant signed the statement. He denied being provided
Miranda warnings, although initialed warnings appear on the face of his statement.



Appellant claimed that his statement was placed in the waste paper basket and that
he was given another statement to sign, a statement containing things he did not say. 
         Appellant's contention regarding the voluntariness of his statement depends
upon facts that were resolved by the trial court against appellant's position. After
reviewing the record, we find that the evidence is sufficient to support the trial court's
factual rendition. Although appellant introduced conflicting evidence, the trial court
could have found that evidence to not be credible. See Lamb v. State, 680 S.W.2d
11, 15 (Tex. Crim. App. 1984). Giving almost total deference to a trial court's
resolution of the historical facts, see Guzman, 955 S.W.2d at 89, we conclude the
trial court correctly ruled that appellant's written statement was made voluntarily and
that it was properly admitted into evidence. Appellant's fourth point of error is
overruled.VI. Testimony of Defense Witness
         In his fifth point of error, appellant complains that the trial court erred in denying
his witness, Isauro Garcia, the opportunity to testify regarding an alleged instance
where Chapa, the deceased, attacked the witness with a knife. Garcia, however, did
testify about a separate crime allegedly committed by the victim in this case. Garcia
testified that Chapa assaulted him with a knife, demanded his wallet and took his
watch. Defense counsel then asked Garcia to describe the knife used in the alleged
assault. The State objected to this question on the basis of relevancy, and the trial
court sustained the objection.
         Appellant contends that excluded evidence regarding the alleged attack was
relevant to the credibility of the witnesses and to the nature of the relationship
between the deceased and appellant. In order to preserve error, however, appellant
must offer the evidence and obtain a ruling on the offer of proof. Tex. R. App. P. 33.2;
Tex. R. Evid. 103(a)(2). Both the offer of the evidence and the adverse ruling of the
trial court must appear in the record. The substance of the excluded evidence must
be made known to the court by an offer as soon as practicable, but before the court's
charge is read to the jury. Tex. R. Evid. 103(b).
         We have reviewed the record and find that appellant did not offer the evidence
and obtain the trial court's ruling on his offer of proof. Neither does the record show
the substance of the testimony from the context within which the questions were
asked. See id. at rule 103(a)(1); see also In re N.R.C., 94 S.W.3d 799, 806 (Tex.
App.–Houston [14th Dist.] 2002, pet. denied) (offer of proof may be made by counsel
who should reasonably and specifically summarize evidence offered and state
relevance unless already apparent). An appellate court cannot decide whether
evidence is improperly excluded unless the evidence is included in the record for
review. McInnes v. Yamaha Motor Corp., 673 S.W.2d 185, 187 (Tex. 1984). 
Accordingly, we conclude appellant has not preserved error for review, and we
overrule his fifth point of error.
VII. Autopsy Photographs
         By point of error six, appellant contends the trial court erred in admitting
autopsy photographs of the victim's burnt, mutilated and decomposed body. 
Appellant complains that the photographs were prejudicial and that they were
duplicative of witness testimony and the autopsy report and, thus, had little probative
value.


 See Tex. R. Evid. 403.
         The admissibility of photographs over a challenge is within the sound discretion
of the trial court. Rojas v. State, 986 S.W.2d 241, 249 (Tex. Crim. App. 1998);
Montogomery v. State, 810 S.W.2d 372, 378-80 (Tex. Crim. App. 1990). The trial
court's decision will be reversed only if it was "outside the zone of reasonable
disagreement." Narvaiz v. State, 840 S.W.2d 415, 429 (Tex. Crim. App. 1992);
Montgomery v. State, 310 S.W.2d 372, 380 (Tex. Crim. App. 1990) (op. on rehr'g).
         Rule of evidence 403 provides that, "[a]lthough relevant, evidence may be
excluded if its probative value is substantially outweighed by the danger of unfair
prejudice, confusion of the issues, or misleading the jury, or by considerations of
undue delay, or needless presentation of cumulative evidence." Tex. R. Evid. 403. We
employ the following four-prong test in reviewing a trial court's evidentiary ruling under
rule 403: (1) the probative value of the evidence; (2) the potential to impress the jury
in some irrational, yet indelible, way; (3) the time needed to develop the evidence; and
(4) the proponent's need for the evidence. Erazo v. State, 144 S.W.3d 487, 489 
(Tex. Crim. App. 2004); Montgomery, 810 S.W.2d at 389-90. In the context of the
admission of photographs, we also consider the following factors: (1) the number of
photographs; (2) their size; (3) whether they are in color or black and white; (4)
whether they are gruesome; (5) whether the body depicted is clothed or naked; and
(6) whether the body has been altered by autopsy. Erazo, 144 S.W.3d at 489. 
 
A photograph should add something that is relevant, legitimate, and
logical to the testimony that accompanies it and that assists the jury in
its decision-making duties. Sometimes this will, incidentally, include
elements that are emotional and prejudicial. Our case law is clear on this
point: If there are elements of a photograph that are genuinely helpful to
the jury in making its decision, the photograph is inadmissible only if the
emotional and prejudicial aspects substantially outweigh the helpful
aspects.

Id. at 491-92.
         In this case, the trial court admitted thirty-one photographs as State Exhibits
109-124, 126, 128-130, 132-133, 136-140, 142, and 145-147.


 The four-by-six-inch color autopsy and post-autopsy photographs are of the decedent's body. They
were admitted into evidence in conjunction with the testimony of Investigator Joel
Castro, the identification technician with the Hidalgo County Sheriff's Department who
observed and photographed the autopsy. They were introduced to show the extent
of the victim's wounds and to illustrate the cause of death. See Izaguirre v. State,
695 S.W.2d 224, 226 (Tex. App.–Corpus Christi 1985, no pet.). Some photographs
show external gunshot wounds on the victim's body, and some depict internal views
of the victim's chest, brain and organs. Some show views of the victim's body from
different distances and angles. The admitted photographs are gruesome and depict
the victim's burned and markedly decomposed body, the location and size of the
external gunshot wounds, the exposed brain, other exposed organs, and the victim's
open chest cavity.
         Under Erazo's first prong, the probative value of the evidence, we note that
photographs that prove death have probative value. Juhasz v. State, 827 S.W.2d
897, 402 (Tex. App.–Corpus Christi 1992, pet. ref'd). Probative value is established
if the photograph is needed to support the observations and conclusions of
pathologists, or to otherwise corroborate evidence presented at trial. Lewis v. State,
505 S.W.2d 603, 604 (Tex. Crim. App. 1974). Moreover, post-autopsy photographs,
similar to those in this case, have been held admissible for the purpose of aiding the
jury in understanding the victim's injuries and cause of death. See, e.g., Drew v.
State, 76 S.W.3d 436, 453 n.4 (Tex. App.–Houston [14th Dist.] 2002, pet. ref'd)
(discussing cases allowing admission of post-autopsy photographs).
         In this case, the autopsy and post-autopsy photographs aided Investigator
Castro in explaining the victim's injuries and the cause of death. The photographs
assisted the jury in visualizing the wounds suffered by the victim for whose death the
defendant was on trial. They depicted the gunshot wounds on the burned,
decomposed body of the man, and were undoubtedly disturbing to the jurors. 
Nonetheless, we conclude the photographs had probative value in that they added
something logical and relevant that made the photographs more probative than
prejudicial. See Erazo, 144 S.W.3d at 491-92. As a result, this first factor weighs
strongly in favor of admissibility.
         In determining the second factor, we look at the photographs' potential to
impress the jury in some irrational, yet indelible way. Id. at 489. "[I]f a photograph
is competent, material and relevant to the issue on trial, it is not rendered inadmissible
merely because it is gruesome or might tend to arouse the passions of the jury, unless
it is offered solely to inflame the minds of the jury." Id. (quoting Martin v. State, 475
S.W.2d 265, 267 (Tex. Crim. App. 1972)). Autopsy photographs are generally
admissible unless they depict mutilation caused by the autopsy itself. Hayes v. State,
85 S.W.3d 809, 816 (Tex. Crim. App. 2002); Rojas, 986 S.W.2d at 249. The main
concern in these cases is that the jury might attribute certain injuries caused by the
autopsy to the appellant, which would unfairly prejudice the appellant's case. See
Rojas, 986 S.W.2d at 249. Changes rendered by the autopsy process are nonetheless
of minor significance if the disturbing nature of the photograph is primarily due to the
injuries caused by the appellant. Hayes, 85 S.W.3d at 816 (citing Santellan v. State,
939 S.W.2d 115, 173 (Tex. Crim. App. 1997)); Newbury v. State, 135 S.W.3d 22,
43-44 (Tex. Crim App. 2004); Rojas, 986 S.W.2d at 249. Furthermore, as long as
the post-autopsy photographs aid the jury in understanding the injury and do not
emphasize mutilation caused by the autopsy, the photographs are admissible. Todd
v. State, 911 S.W.2d 807, 819 (Tex. App.–El Paso 1995, no pet.).
         The autopsy and post-autopsy photographs in this case show the nature and the
manner of the victim's death. We cannot conclude that the images in the photographs
appeal only to the jury's emotional side and encourage the jurors to make a decision
on an emotional basis, and not on the basis of the other relevant evidence introduced
at trial. See Erazo, 144 S.W.3d at 491-92. This factor weighs in favor of
admissibility.
         The third factor, the time needed to develop the evidence, also weighs in favor
of admissibility. See id. Here, the State took little time before the jury to lay the
foundation for the photographs and introduce them into evidence. The State
introduced the photographs during Investigator Castro's testimony as demonstrative
evidence to assist visually in the witness's explanation of the injuries and the manner
of his death. Little time was taken to develop the evidence, relative to the length of
the trial. See Horton v. State, 986 S.W.2d 297, 303 (Tex. App.–Waco 1999, no pet.)
(holding eighteen pages of 332 pages of evidence did not significantly divert jury's
attention from central issue).
         Finally, in analyzing the fourth factor, the State's need for the evidence, we ask,
"Does the proponent have other available evidence to establish the fact of
consequence the photograph is relevant to show?" Erazo, 144 S.W.3d at 495. If so,
we then ask, "How strong is that other evidence, and is the fact of consequence
related to an issue that is in dispute?" Id. at 495-96.
         Regarding the first and second questions, the State offered the autopsy and
post-autopsy photographs to show the injuries and the manner or method of the
victim's death. The burden rested with the State to prove all the elements of the
crime. The strength of the other available evidence to establish the manner of death,
including Investigator Castro's testimony, the death certificate and the autopsy report,
was not as strong without the photographs. However, the facts of consequence the
photographs were admitted to show were not in issue. Therefore, based on the
answers to the questions, we are led to the conclusion that the fourth factor weighs
slightly in favor of admissibility.
         Accordingly, we conclude, from a thorough analysis of the factors, that the
photographs of the victim were more probative than prejudicial. The court did not
abuse its discretion in admitting the autopsy and post-autopsy photographs; its
decision to admit the photographs was not outside the zone of reasonable
disagreement. See Narvaiz, 830 S.W.2d at 429. Moreover, even had the trial court
erred in admitting any of the photographs, a conviction will not be reversed "merely
because the jury was exposed to numerous admittedly gruesome pictures." Drew, 76
S.W.3d at 453 (quoting Long v. State, 823 S.W.2d 259, 272 (Tex. Crim. App.
1991)). The appropriate standard of harm found in appellate rule 44.2(b) states that
"any other error, defect, irregularity, or variance that does not affect substantial rights
must be disregarded." Tex. R. App. P. 44.2(b). "A criminal conviction should not be
overturned for non-constitutional error if the appellate court, after examining the record
as a whole, has fair assurance that the error did not influence the jury, or had but a
slight effect." Johnson v. State, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998). 
After examining the record, this Court has fair assurance that error, if any, did not
influence the jury at either stage of trial, or had but a slight effect. See id. The
admission of the photographs did not affect appellant's substantial rights. See Tex.
R. App. P. 44.2(b); Drew, 76 S.W.3d at 453. We overrule appellant's sixth point of
error.
VIII. Autopsy Report
         By his seventh point of error, appellant complains that the trial court erred in
admitting the autopsy report. Generally, autopsy reports are admissible pursuant to
the public record and business record exceptions to the hearsay rule.


 See Tex. R.
Evid. 803(6); Tex. R. Evid. 803(8); Butler v. State, 872 S.W.2d 227, 238 (Tex. Crim.
App. 1994); Garcia v. State, 868 S.W.2d 337, 338 (Tex. Crim. App. 1993). An
autopsy report is provided by a medical examiner who holds a public office, see Tex.
Code Crim. Proc. Ann. art. 49.25, § 1 (Vernon Supp. 2004-2005), and who has duties
related to the preparation and filing of a report stating the cause of death, duties
imposed by law.


 Id. at art. 49, §§ 6, 9 and 11; Butler, 872 S.W.2d at 237-38 (citing
Tex. R. Evid. 803(8)(B)); Garcia, 868 S.W.2d at 340-42. Moreover, the autopsy report
is subject to required public disclosure. Tex. Code Crim. Proc. Ann. art. 49.25, § 11
(Vernon Supp. 2004-2005).
A. Law Enforcement Exclusion
         Appellant does not challenge the general proposition that an autopsy report may
be admissible as a public record. He does, however, contend the exclusion set out
in rule of evidence 803(8)(B) applies because the forensic pathologist who prepared
the report falls into the category of "other law enforcement personnel." See Tex. R.
Evid. 803(8)(B). Rule 803(8)(B) provides, in relevant part, that public records and
reports include "reports . . . setting forth . . . matters observed pursuant to duty
imposed by law as to which matters there was a duty to report, excluding in criminal
cases matters observed by police offices and other law enforcement personnel . . . ." 
Id.
         In Cruz v. State, 827 S.W.2d 83, 84-86 (Tex. App.–Corpus Christi 1992, no
pet.), without the benefit of the opinion on rehearing in Cole v. State, 839 S.W.2d
798 (Tex. Crim. App. 1992) (opinion on rehearing), this Court concluded that an
autopsy report was inadmissible because medical examiners are "law enforcement
personnel." See Cruz, 827 S.W.2d at 86. Subsequently, however, the Texas Court
of Criminal Appeals applied the two-prong test set out in Cole's opinion on rehearing
and held "as a general rule, medical examiners are not considered 'other law
enforcement personnel' under Rule 803(8)(B) as far as their duties relate to the
preparation of autopsy reports." Garcia, 868 S.W.2d at 342.
         Likewise, applying the Cole test, we conclude that the autopsy report in this
case was prepared by one who is not considered "other law enforcement personnel"
under rule 803(8)(B). See id. Even though autopsy reports are partially subjective,
they are generally prepared by officials with no motive to fabricate the results of the
reports, and as a general rule, a medical examiner's office is not such a uniquely
litigious and prosecution-oriented environment as to create an adversarial context. See
id. Appellant only generally complains that the exclusion applies because the one who
prepared the autopsy report was a law enforcement officer. He does not complain,
and the record does not support, that the autopsy report was not an objective, routine,
scientific determination of an unambiguous factual nature prepared by one with an
inherent motivation to distort the results, or that the report was prepared by an official
with a motive to fabricate the result. See id. Accordingly, we conclude the examiner
in this case was not "other law enforcement personnel" under rule 803(8)(B) as far as
his duties related to the preparation of the autopsy report. Because we conclude the
exclusion found in rule 803(8)(B) does not apply, the autopsy report in this case was
admissible under the public records exception to the hearsay rule. See Butler, 872
S.W.2d at 238.
B. Confrontation Rights
         We next turn to appellant's argument that the autopsy report was inadmissible
under the confrontation clause because the pathologist who prepared the report did
not, and in fact could not, testify at trial because he had died. We review the trial
court's ruling de novo in deciding this constitutional issue.


 Lilly v. Virginia, 527 U.S.
116, 134 (1999); Wall v. State, 143 S.W.3d 846, 849 (Tex. App.–Corpus Christi
2004, pet. filed).
         The United States Supreme Court recently set out the test for determining the
admissibility of evidence subject to a confrontation challenge. See Crawford v.
Washington, 541 U.S. 36, 124 S. Ct. 1354, 1369 (2004). The threshold question
is whether the autopsy report was testimonial or non-testimonial in nature. See id. at
1374; Woods v. State, No. 74430, 2004 Tex. Crim. App. LEXIS 2146, at *17 (Tex.
Crim. App. Dec. 15, 2004); Wall,143 S.W.3d at 850; Brooks v. State, 132 S.W.3d
702, 705 (Tex. App.–Dallas 2004, pet. filed). "Prior to the Supreme Court's decision
in Crawford, hearsay statements were admissible for purposes of the Confrontation
Clause if they possessed adequate 'indicia of reliability.'" Woods, 2004 Tex. Crim.
App. LEXIS 2146, at *17 (citing Ohio v. Roberts, 448 U.S. 56, 66 (1980)). In
Crawford, however, the Supreme Court drew a distinction between testimonial and
non-testimonial statements. Id. The admission of testimonial hearsay violates the
Sixth Amendment unless the declarant is unavailable to testify, and the defendant had
a prior opportunity to cross-examine the declarant. Crawford, 124 S. Ct. at 1374;
Wall, 143 S.W.3d at 850-51. While declining to spell out a comprehensive definition
of testimonial statements, the Supreme Court stated that testimonial hearsay "applies
at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a
former trial; and to police interrogations." Crawford, 124 S. Ct. at 1374; Woods,
2004 Tex. Crim. App. LEXIS 2145, at *17. "[W]here testimonial statements are at
issue, the only indicium of reliability sufficient to satisfy constitutional demands is the
one the Constitution actually prescribes: Confrontation." Crawford, 124 S. Ct. at
1374.
         In Wall, this Court held that the admission of a statement given in response to
investigative questioning by a deputy–testimonial hearsay–violated the appellant's
right to confrontation under the Sixth Amendment. Wall, 143 S.W.3d at 851. 
Compare Gutierrez v. State, 150 S.W.3d 827, 830 (Tex. App.–Houston [14th Dist.]
2004, no pet.) (co-defendant's videotaped statement given voluntarily to police
qualifies as testimonial statement as matter of law); Samarron v. State, 150 S.W.3d
701, 705-08 (Tex. App.–San Antonio, pet. filed) (witness's formal, signed, written
statement given after being questioned by detective at police station held testimonial);
Brooks, 132 S.W.3d at 705 (non-testifying co-defendant's written custodial statement
determined testimonial in nature); Lee v. State, 143 S.W.3d 565, 570 (Tex.
App.–Dallas 2004, no pet.) (co-defendant's out-of-court statement made in response
to questions of officer during roadside stop after appellant had been arrested held
testimonial); with Woods, 2004 Tex. Crim. App. LEXIS 2146, at *18 (held casual
remarks spontaneously made to acquaintances non-testimonial); Wiggins v. State, No.
06-03-00216-CR, 2004 Tex. App. LEXIS 10267, at *7 (Tex. App.–Texarkana Nov.
18, 2004, pet. filed) (designated for publication) (co-conspirator's statements made
in furtherance of conspiracy non-testimonial); Wilson v. State, No. 02-03-490-CR,
2004 Tex. App. LEXIS 9874, at *3-*10 (Tex. App.–Fort Worth, Nov. 4, 2004, pet.
filed) (designated for publication) (witness's statement not testimonial, more in nature
of inquiry initiated by witness); Cassidy v. State, 149 S.W.3d 712, 716 (Tex.
App.–Austin 2004, pet. ref'd)  (interview of witness by police officer at hospital,
shortly after assault, not interrogation; not testimonial hearsay).
         In the present case, a certified copy of the autopsy report was admitted into
evidence. The report set forth matters observed pursuant to a duty imposed by law. 
See Butler, 872 S.W.2d at 237-38 (citing Tex. R. Evid. 803(8)(B)). The report revealed
that the body was found in an advanced state of decomposition apparently partially
burned by fire. It approximated the post-mortem interval at one to two weeks. The
report contained observations about the victim's body, hair, and teeth. It determined
the length and approximate weight of the body and the condition of various body
parts. The report also contained observations about tattoos and articles of partially
burned clothing found on the body. The report set out the location and the nature of
injuries. It also determined the cause of death as,
[m]ultiple shotgun wounds and gunshot wound to the head[.] Shotgun
wound to the back of the head and neck with brain injury and multiple
fractures secondary to the explosive force of the pellet load[.] Gunshot
wound to the left side of the head with brain injury and multiple fractures
of crania vault and base secondary to explosive force of the bullet[.]
Shotgun wound to right side of the chest with injury to the right lung.

         Based on our review, the autopsy report in this case does not fall within the
categories of testimonial evidence described in Crawford. It is not prior testimony at
a preliminary hearing, before a grand jury, or at a former trial. Crawford, 124 S. Ct.
at 1374. It is not a statement given in response to police interrogations. See id. 
Because the autopsy report was non-testimonial in nature, the new rule articulated in
Crawford is not applicable in this case. See Woods, 2004 Tex. Crim. App. LEXIS
2146, at *18.
         Moreover, even if the introduction of the autopsy report without the forensic
pathologist's testimony was error, the error would be harmless. Tex. R. App. P.
44.2(a). The evidence presented by the State, even without the report, was sufficient
upon which to base a finding that appellant was guilty. If the admission of the report
violated either the rules of evidence or the confrontation clause, this Court is satisfied
beyond a reasonable doubt that it did not contribute to the conviction or punishment. 
See id. We overrule appellant's seventh point of error.
IX. State's Efforts to Subpoena Certain Witnesses
         By his eighth point of error, appellant appears to contend that the trial court
erred in allowing Raul Gonzalez, a criminal investigator with the Mission Police
Department, to testify regarding his service of subpoenas on Eduardo Barbosa and
Monica Maria Contreras and his attempted service on Humberto Villanueva. Appellant
argues that a false impression was created when the trial court allowed the State to
discuss the failure of witnesses to appear and then refused to allow the defense "to
show lack of good faith by the State when [the State] allegedly knew and let one of
its witnesses go to Mexico." However, appellant does not provide record references
to evidence he claims should have been excluded. See Tex. R. App. P. 38.1(h). 
Appellant only cites portions of a hearing outside the jury's presence where the trial
court and counsel discussed Gonzalez's testimony. Appellant cites neither to
Gonzalez's testimony nor to exhibits. Moreover, appellant does not cite authority for
the proposition that the trial court was required to exclude this evidence. See id.;
Cardenas v. State, 30 S.W.3d 384, 393 (Tex. Crim. App. 2000). Appellant's eighth
point of error is overruled.
X. Failure to Produce Reports or Admit Production of Reports
         By his ninth point of error, appellant appears to be complaining about either an
error on the part of the trial court in failing to order the State to produce "several
reports" or its failure to exclude those reports. However, appellant cites only to the
record of a hearing held near the end of trial and outside the jury's presence. The trial
court asked about "bills of proof." The defense counsel offered defense exhibits two
through six, as "examples of the State's conduct in failing to produce statements."


 
At the hearing, defense counsel argued that the "statements should have been
introduced or allowed to be introduced . . . ."
         Appellant, however, does not cite to a portion of the record where he requested
that the trial court order the State to produce these reports, or where the reports were
offered during the course of the trial and the trial court refused to admit the evidence. 
Neither does appellant cite authority to support this point of error. See Tex. R. App.
P. 38.1(h). A reviewing court "will not brief appellant's case for him." Garcia v.
State, 887 S.W.2d 862, 882 (Tex. Crim. App. 1994). Appellant's ninth point of error
is overruled.XI. Evidentiary Rulings
         Appellant states in his tenth point of error that the trial court reversibly erred in
making several evidentiary rulings. However, there is no argument supporting this
point of error. The appellate rules and our case law demand that appellant "present
his own case, stating his specific legal argument, specifying and citing from the record
the factual bases for his argument, and preservation of error in the record, and argue
case law, explaining its pertinence to his argument." Id. This point is inadequately
briefed. 
         We further note that the evidentiary ruling found in the one record cite provided
by appellant is a ruling favorable to the defense. Thus, no error stems from the trial
court's ruling. Point of error ten is overruled.
 
XII. Prosecutorial Misconduct
         Finally, by his eleventh point of error, appellant asserts that the conduct of the
prosecutor denied him due process, a fair trial, due course of law, and effective
assistance of counsel. Appellant asserts that "[t]he number [of comments] was so
great that there can be little doubt they had an impact on the jury." However,
appellant does not explain or discuss the specific sidebar remarks and does not assert
how they harmed him. Appellant also generally references volumes five through
fifteen of the reporter's record to support this complaint that the sidebar remarks begin
from the beginning of the trial and continue until the end. This general record citation
encompasses most of the trial record–from the State's direct examination of one of
the hunters who discovered the victim's body to the polling of the jury on its guilty
verdict. Yet, there are no specific cites to the record. We also note that a portion of
the record about which he complains took place outside of the jury's presence. Again,
we will not brief appellant's argument for him. See id.
         Moreover, complaints about a prosecutor's inappropriate comments about
opposing counsel before the jury must be preserved by an objection. Garcia v. State,
126 S.W.3d 921, 925 (Tex. Crim. App. 2004); Cannady v. State, 11 S.W.3d 205,
211-14 (Tex. Crim. App. 2000). In many instances, an instruction to disregard will
cure any error related to negative comments made about opposing counsel. Cannady,
11 S.W.3d at 211-14. Because appellant failed to make specific, timely objections to
the instances about which he now complains, he has not preserved error for our
review. See Tex. R. App. P. 33.1(a)(1)(A). 
         Finally, regarding his ineffective assistance of counsel claim, appellant fails to
cite authority and posit arguments to establish the Strickland elements of ineffective
assistance of counsel. See Strickland v. Washington, 466 U.S. 668, 694 (1984). 
Appellant has waived this claim. See Tex. R. App. P. 38.1(h); Cardenas, 30 S.W.3d
at 393. We overrule appellant's eleventh point of error.
XIII. Conclusion
         Accordingly, the judgment of the trial court is affirmed. 
 
                                                                        NELDA V. RODRIGUEZ
                                                                        Justice

Publish.
Tex. R. App. P. 47.2(b).

Opinion delivered and filed this
3rd day of February, 2005.