**Michael Jamil TYLER, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 14–04–00544–CR.**

Court of Appeals of Texas, Houston (14th Dist.).

June 21, 2005.

Roland B. Moore, III, Houston, for appellants.

William J. Delmore, III, Houston, for appellees.

Panel consists of Chief Justice HEDGES and Justices FOWLER and FROST.

## OPINION

ADELE HEDGES, Chief Justice.

Appellant, Michael Jamil Tyler, appeals from his conviction for the capital murder of Vlryn Veal. A jury found appellant guilty, and the trial court assessed punishment at life in prison. On appeal, appellant contends that (1) the evidence is legally insufficient to support the verdict because the only evidence of an element of the crime was in the form of testimonial hearsay admitted in violation of the Sixth Amendment right of confrontation, and (2)

the trial court erred in ruling that the hearsay statement was admissible as an excited utterance. U.S. Const. amend. VI. We affirm.

### Background

On December 24, 2002, Vlryn Veal was leaving a bar with his stepfather and a co-worker when a man approached Veal and asked him for a light. Veal went to the driver's side of his truck and retrieved a lighter. The man then shot Veal in the abdomen, and Veal later died following surgery.

At trial, two eyewitnesses, Veal's stepfather and co-worker, identified appellant as the man who shot Veal. They had both previously identified appellant in photo arrays. Appellant was also connected by evidence to the vehicle that was used by the assailant to flee from the crime scene. Also at trial, Officer Kirk Milton of the Houston Police Department testified that after the shooting he encountered Veal at the hospital. He stated that Veal told him what had happened outside the bar, including that the assailant had demanded his wallet immediately prior to shooting him. There was no other evidence regarding what was said between Veal and his assailant when they went to Veal's truck to get a lighter. The two eyewitnesses were on the opposite side of the truck and could not hear what was being said. The importance of Milton's testimony was that it permitted the jury to convict appellant of capital murder because the murder was committed during the commission of a robbery. *See* Tex. Pen.Code Ann. § 19.03(a)(2) (Vernon Supp.2004).

Prior to trial, the defense filed a motion to suppress, contending that Milton's testimony regarding what Veal told him was testimonial hearsay, and, as such, its admission would violate the Confrontation Clause of the Sixth Amendment. Milton was the only witness called at the hearing. He testified that he was dispatched to the crime scene at 11:43 p.m. and arrived at 11:48 p.m. After taking a few minutes to secure the scene and hand it over to later arriving officers, Milton followed Veal's ambulance to the hospital, which took fifteen to twenty minutes. There, he found Veal being prepared for surgery by several of the hospital staff, who appeared to be in a hurry. Milton was in uniform; Veal was still lying on the ambulance gurney, and there was a lot of blood around him. He appeared to be in great pain; he was moaning and squirming. Milton asked Veal if he was "Mr. Veal," and without further prompting, Veal told Milton what had happened to him that night, including that the assailant pulled a gun on him and asked for his wallet. Veal said that he refused to hand over his wallet but told the assailant he would still give him a light; when Veal turned around with the lighter, the assailant shot him in the stomach. During his recitation of events, Veal's voice was "crackly," and he paused several times. He kept repeating that he could not believe that he had been shot. Milton specifically stated that he just listened to Veal and did not ask questions. He said that he wanted to get some initial information regarding the events that had transpired. He further stated that Veal was taken into surgery after telling Milton about the events.

At the conclusion of Milton's testimony, the parties stipulated that the hospital records showed that the ambulance left the scene at 11:53 p.m. and arrived at the hospital at 12:01 a.m. and that Veal was taken to the operating room at 12:16 a.m. The trial court then ruled from the bench that Veal's statements to Milton were not testimonial in nature and were admissible.

### Confrontation Clause

■ In his first issue, appellant contends that the evidence is legally insuffi-

cient to support the verdict because the only evidence of a particular element of the crime was in the form of testimonial hearsay admitted in violation of the Sixth Amendment right of confrontation, citing *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). In *Crawford,* the Supreme Court reexamined the admissibility of hearsay statements under the Confrontation Clause. Prior to *Crawford,* the issue had been governed by *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). Under *Roberts,* hearsay statements were admissible under the Confrontation Clause if the statements fell under "a firmly rooted hearsay exception" or bore "particularized guarantees of trustworthiness." 448 U.S. at 66, 100 S.Ct. 2531. In *Crawford,* the Court reviewed the history of the Confrontation Clause and the wrongs that it was meant to redress, particularly the use of ex parte examinations as evidence against an accused, as occurred in the civil-law mode of criminal procedure. 541 U.S. at 50, 124 S.Ct. 1354. These examinations were undertaken by justices of the peace or other government officials outside the presence of the accused or his representatives and were sometimes read in court in lieu of live testimony. *Id.* at 43, 50–51, 124 S.Ct. 1354. The *Crawford* court therefore drew a distinction between testimonial and nontestimonial hearsay and held that testimonial hearsay is inadmissible under the Confrontation Clause unless the declarant is unavailable and the accused had a prior opportunity to cross-examine the declarant. *Id.* at 53–54, 59, 68–69, 124 S.Ct. 1354.

The *Crawford* court purposely did not provide a comprehensive definition of testimonial hearsay. *Id.* at 68 & n. 10, 124 S.Ct. 1354. However, it did state that the term "applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *Id.* at 68, 124 S.Ct. 1354. The Court explained that "[t]hese are the modern practices with closest kinship to the abuses at which the Confrontation Clause was directed." *Id.* The Court additionally highlighted, but refused to expressly adopt, certain formulations of what constitutes testimonial statements: (1) ex parte in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially; (2) extra-judicial statements contained in formalized testimonial materials, such as depositions, prior testimony, or confessions; and (3) statements that were made under circumstances which would lead an objective witness to believe that the statement would be available for use at a later trial. *Id.* at 51–52, 124 S.Ct. 1354.

■ It could therefore be concluded that testimonial statements involve a declarant's knowing responses to structured questioning in an investigative environment or a courtroom setting where the declarant would reasonably expect that his or her responses might be used in future judicial proceedings. *Wiggins v. State,* 152 S.W.3d 656, 659 (Tex.App.-Texarkana 2004, pet. ref'd) (citing *United States v. Saget,* 377 F.3d 223, 228 (2d Cir.2004)). Further, it is apparent that the question of whether a statement is testimonial turns not on the content of the statement but on the procedure used to procure the statement. *Scott v. State,* 165 S.W.3d 27, at 46 (Tex.App.-Austin, 2005, no pet. h.).

Since *Crawford* was issued, the subject of just what constitutes testimonial statements by an out-of-court declarant has become increasingly well-trod ground in Texas courts. Appellant and the State point to two apparently conflicting cases dealing with statements made to police at

a hospital shortly after violent events involving the declarants. In *Cassidy v. State*, the Austin Court of Appeals held that a police officer's interview of a stabbing victim at a hospital one hour after the assault did not constitute police interrogation as contemplated by *Crawford*; thus, the resulting statement was nontestimonial. 149 S.W.3d 712, 714, 716 (Tex.App.-Austin 2004, pet. ref'd), *cert. denied*, —— U.S. ——, 125 S.Ct. 1648, 161 L.Ed.2d 486 (2005). In *Wall v. State*, the Corpus Christi Court of Appeals expressly disagreed with the Austin court and held that an officer's questioning of a beating victim in a hospital constituted interrogation; thus, the resulting statement was testimonial under *Crawford*. 143 S.W.3d 846, 851 (Tex.App.-Corpus Christi 2004, pet. granted). The court emphasized that the statement was given in response to investigative questioning. *Id.*

The State urges us to adopt the position taken by the Austin Court, and appellant urges us to take the position adopted by the Corpus Christi Court. However, we decline to take sides in this disagreement because the circumstances in the present case are fundamentally different from those encountered in either of these prior opinions. Here, it is undisputed that there was no investigative questioning of Veal at the time he gave his statement. Officer Milton asked Veal if he was "Mr. Veal"; Milton specifically testified that he asked no further questions and that Veal simply told him what happened. Thus, Veal clearly did not give his statement in response to police interrogation. *See Scott*, 165 S.W.3d at 45–46 (holding that statement to police was testimonial because given in response to structured police questioning); *Wilson v. State*, 151 S.W.3d 694, 698 (Tex.App.-Fort Worth 2004, pet. ref'd) (holding that statement to police was nontestimonial where declarant was not responding to structured police questioning).

The statements were not being recorded in any manner and were given in a particularly informal setting, while Veal was being prepared for surgery by hospital staff. *See Samarron v. State*, 150 S.W.3d 701, 707 (Tex.App.-San Antonio 2004, pet. ref'd) (holding that signed, written statement given at police station after police questioning was testimonial). It appears that Veal simply wanted to let the officer know what happened to aid the start of the investigation. *C.f. Spencer v. State*, 162 S.W.3d 877, at 879, 881–82 (Tex.App.-Houston [14th Dist.] 2005, no pet. h.) (holding that initial police-victim interaction at crime scene was not testimonial). Based on these circumstances, we hold that Veal's statement was not testimonial in nature.

Appellant makes no further argument regarding the sufficiency of the evidence. Accordingly, we overrule his first issue.

### Excited Utterance

 Having determined that the hearsay statements were not testimonial, we turn to appellant's second issue in which he contends that the trial court violated the Texas Rules of Evidence by admitting the statements under the excited utterance exception to the rule generally excluding hearsay. Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. Tex.R. Evid. 801(d). Hearsay is not admissible unless it falls under one of the exceptions specified in the Rules of Evidence. *See* Tex.R. Evid. 802. Whether a hearsay statement is admissible under Rule 802 is a matter within the discretion of the trial court. *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex.Crim. App.2003). The excited utterance hearsay exception permits admission of a statement "relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Tex.R. Evid. 803(2). Here, the State introduced Veal's out-of-

court statements to prove that appellant demanded Veal's wallet before shooting him. It did so by specific reference to the excited utterance hearsay exception.

■ Appellant's only objection in the trial court to the admission of this evidence was that the statements were testimonial in nature. Appellant never objected that the statements were not excited utterances. Consequently, appellant failed to preserve this argument for appeal. *See* TEX.R.APP. P. 33.1(a) (providing that to preserve error for appellate review party must make a timely and sufficiently explicit request, objection, or motion in the trial court); *Resendiz v. State*, 112 S.W.3d 541, 547 (Tex.Crim.App.2003) (holding that error was not preserved where appellate argument did not comport with trial objection).

■ Furthermore, even if appellant had preserved this argument, we find that it is without merit. The critical determination in regard to the excited utterance exception is whether the declarant was still dominated by the emotions, excitement, fear, or pain of the event or condition at the time he or she made the statement. *Zuliani*, 97 S.W.3d at 595–6. We may consider the time elapsed between the event and the statement and whether the statement was in response to questioning, but these factors are not necessarily dispositive. *Id.* Ultimately, we must determine whether the statement was made under such circumstances as would reasonably show that it resulted from impulse rather than reason and reflection. *Id.* at 596.

Here, there was considerable evidence that at the time he made the statements Veal was still dominated by the emotions, excitement, fear, or pain of having been shot. Although it cannot be determined for certain how much time elapsed from the shooting to the making of the statements, it is clear from Milton's testimony

and the hospital records that it was not a lengthy period of time. The ambulance left the scene at 11:53 p.m. and Veal went into the operating room at 12:16 a.m. Milton said that Veal gave the statement at the hospital before entering the operating room. *See Lawton v. State*, 913 S.W.2d 542, 553–54 (Tex.Crim.App.1995) (holding statements at hospital were excited utterances where declarant had witnessed shooting of his father-in-law about one hour prior to making the statements); *Ross v. State*, 879 S.W.2d 248, 248–49 (Tex. App.-Houston [14th Dist.] 1994, pet. ref'd) (holding statement made to ambulance attendant thirty to forty-five minutes after declarant was shot was excited utterance); *Parks v. State*, 843 S.W.2d 693, 696–98 (Tex.App.-Corpus Christi 1992, pet. ref'd) (holding that statements at hospital did not constitute excited utterances when made six hours after declarant was shot and after operation and time for recovery); *Mathews v. State*, 835 S.W.2d 248, 249–50 (Tex.App.-Fort Worth 1992, no pet.) (holding that statement made to paramedic in ambulance was excited utterance despite lack of evidence regarding time that had elapsed between declarant being shot and making statement). Milton stated that Veal was in pain when he made the statements and that he made the statements without questioning or prompting from Milton. Further, Veal repeatedly expressed surprise at having been shot. Thus, there was sufficient evidence for the trial court to conclude that Veal's statements resulted from impulse rather than reason and reflection. *See Zuliani*, 97 S.W.3d at 596. The trial court did not abuse its discretion in admitting Veal's statement. Accordingly, we overrule appellant's second issue.

We affirm the trial court's judgment.