IN THE COURT OF
CRIMINAL APPEALS

                                   OF
TEXAS

 

                                                                              

                                                               NO.
PD-1631-04



 

 

                                            ROGER MORGAN WALL, Appellant

 

                                                                             v.

 

                                                        THE
STATE OF TEXAS

 



                                               ON
APPELLANT=S AND
STATE=S 

                                    PETITIONS
FOR DISCRETIONARY REVIEW

                                FROM
THE THIRTEENTH COURT OF APPEALS

                                                             HARRIS  COUNTY



 

Cochran, J., delivered the opinion of the unanimous
Court.    

 

 

                                                                  O
P I N I O N 

 








 A jury convicted appellant of
aggravated assault and, finding that he had two prior felony convictions,
assessed his punishment at 35 years= imprisonment.  On appeal, appellant
argued that the trial court violated his right to confrontation when it allowed
a police officer to testify about one of the assault victim=s out-of court statements made during
a hospital interview.  The court of appeals agreed that admitting the
statements under the excited-utterance exception to the hearsay rule violated
the Sixth Amendment under the recently announced Crawford standard.[1] 
The court of appeals found, however, that the error was harmless because the
properly admitted evidence included testimony from three different eyewitnesses
that appellant, without provocation, struck several people, including the
complainant, with a board.  We granted review to determine whether appellant=s confrontation rights were in fact
violated, and if so, whether that violation was harmful.[2] 
We agree with the court of appeals that appellant=s confrontation rights were violated,
and that the violation was harmless during the guilt stage.  Therefore, we affirm
appellant=s conviction.  Because the court of appeals did not address whether the Crawford
violation was harmful at the punishment stage, we remand this case to that
court for further proceedings.

I.








On December 31, 2001, a group of
homeless men gathered to drink and talk at an abandoned Shell station off the
feeder road of I-10 in Channelview, Texas.  Appellant, who lived in a nearby
apartment and who knew some of the men, joined the group.  At some point during
the afternoon, appellant picked up a board and beat several of the men.  Two of
those men, Samuel Pierce and Donald Norman, were severely injured and taken by
ambulance to a nearby hospital.  While in the emergency room, both were
questioned by Deputy Luis Figueroa and photographed by Deputy Kirk Willis.

Appellant was charged with the
aggravated assault of Samuel Pierce.  At trial, Mr. Pierce testified that on
New Year=s Eve afternoon he was at the Shell
station drinking with some people, including appellant, whom he knew only as ARoger.@  Then A[a] bottle got broke against the wall
and things started being said.@  Mr. Pierce said that appellant was behind him, and the next
thing he knew he was hit in the head a couple of times with a two-by-four
board. When he put up his arm in self defense, appellant hit his arm.  Mr.
Pierce=s injuries included a cut on his head
that required stitches, a fractured nose, and a broken arm that required Aa lot of surgeries to put it back
together.@  Mr. Pierce said that, as far as he knew, nobody had said or done
anything to appellant to provoke the beating.

Donald Norman did not testify. 
Instead, the State called Deputy Figueroa to relate what Mr. Norman told him in
response to the deputy=s questioning at the hospital.  Appellant objected to this
evidence, claiming that it was inadmissible hearsay and its admission violated
his right to confrontation.  The trial court admitted Mr. Norman=s out-of-court statements under the
excited-utterance exception to the hearsay rule.[3]

Deputy Figueroa recounted his
interview of Mr. Norman:








Q:        When you said that Mr. Norman also talked
about the defendant, did he give you a name or description of the individual
that assaulted him?

A:        Yes, ma=am,
he did.

Q:        What name was he able to give you?

A:        He said he knew him as Roger and did not
know his last name.  Just, I know him as Roger.  And he stated he was
approximately 6 feet in height, bald.

***

Q:        Was Mr. Norman able to give you a
description of the man he knew as Roger?

A:        Yes, he was.

Q:        What was that description?

A:        White male, 6 feet in height, bald, with
tattoos all over him.

Q:        Okay.  Was Mr. Norman able to tell you the
events or how the assault took place?

A:        Yes, he was.

Q:        What did he tell you?

A:        He told me they were drinking and B Mr. Pierce, Mr. Thomas and the defendant were
drinking at the old gas station when the defendant said, AI hate niggers, I hate Mexicans.@

Q:        What didB
what happened after that?

A:        Mr. Norman told me that he told the
defendant, AI like all races.@

***

Q:        Go ahead.

A:        Mr. Norman stated he told the defendant, AI like all races and I served this country for all
races.@

Mr. Norman then told me that the defendant got angry
and said, AYou=re a nigger
lover,@ at which time he walked over to the bed of a truck
and retrieved a club and came back to him and started to assault him, began
assaulting him with a club.

Q:        Was there anything else that Mr. Norman told
you about the assault?

A:        He mentioned that the incident happened very
fast and he didn=t know what to do and just went on and gave the
descriptors and said he only knew him as Roger.

 

            The jury also heard
testimony from two bystander eyewitnesses, Cinellia Fry (who saw the assault
while stopped at a nearby red light), and Jerry Hunter (who watched the assault
from a McDonald=s across the street), as well as other responding deputies,
none of whom testified about the racially charged conversation.








II.

Appellant=s claim on appeal was that the
admission of Mr. Norman=s out-of-court Atestimonial@ statement violated his right to
confrontation under Crawford v. Washington,[4]
which the Supreme Court delivered during the pendency of this appeal.

In Crawford, the defendant was
charged with assault; he claimed self-defense.  The police interrogated both
Crawford and his wife, Sylvia.  Sylvia=s tape-recorded statement, though
generally consistent with Crawford=s own statements, undermined his
claim of self-defense.  Sylvia did not testify at trial because her husband
invoked the state marital privilege.  The prosecutor then offered her
tape-recorded statement to police as a statement against her penal interest. 
Crawford objected on Confrontation Clause grounds, but the trial court found
the statement trustworthy and admissible under Ohio v. Roberts.[5]









After examining the historical
origins of the clause, the Supreme Court repudiated its Roberts
framework of  Aopen-ended balancing tests@ in favor of a Acategorical@ rule that requires Aunavailability and a prior
opportunity for cross-examination@ with regard to Acore testimonial statements that the
Confrontation Clause plainly meant to exclude.@[6]  The Court declined to Aspell out a comprehensive definition
of >testimonial,=@ but it did not leave lower courts
entirely without guidance, as it stated that Athe principal evil at which the
Confrontation Clause was directed was the civil-law mode of criminal procedure,
and particularly its use of ex parte examinations as evidence against
the accused.@[7]

The Supreme Court held that the
admission of a hearsay statement made by a non-testifying declarant violates
the Sixth Amendment if the statement was testimonial, and the  defendant lacked
a prior opportunity for cross‑examination.[8] 
Thus, a Atestimonial@ statement is inadmissible absent a
showing that the declarant is presently unavailable and the defendant had a
prior opportunity for cross‑examination, even if the statement Afalls under a >firmly rooted hearsay exception= or bears >particularized guarantees of
trustworthiness.=@[9]  The Court stressed that if Atestimonial@ evidence is at issue, Athe Sixth Amendment demands what the
common law required: unavailability and a prior opportunity for cross‑examination.@[10]

The Court identified three kinds of
statements that could be regarded as testimonial:

(1)       Aex parte in‑court testimony or its functional equivalent‑‑that
is, material such as affidavits, custodial examinations, prior testimony that
the defendant was unable to cross‑examine, or similar pretrial statements
that declarants would reasonably expect to be used prosecutorially@;

 

2)        Aextrajudicial statements . . . contained in formalized testimonial
materials, such as affidavits, depositions, prior testimony, or confessions@; and 

 








3)        Astatements that were made under circumstances which would lead an
objective witness reasonably to believe that the statement would be available
for use at a later trial.@[11]  

 








The Supreme Court noted that some statements
qualify as testimonial under any definitionBfor example, Aex parte testimony at a preliminary hearing@ and A[s]tatements taken by police officers
in the course of interrogations.@[12]  The Court continued:  Aeven if the Sixth Amendment is not
solely concerned with testimonial hearsay, that is its primary object, and
interrogations by law enforcement officers fall squarely within that class.@[13]  In a footnote, the Court added:

We use the term Ainterrogation@ in its colloquial, rather than any technical legal,
sense. . . . Just as various definitions of >testimonial= exist, one can imagine various definitions of >interrogation,=
and we need not select among them in this case.  Sylvia=s recorded statement, knowingly given in response to
structured police questioning, qualifies under any conceivable definition.[14] 


The Court went on to hold that
admission of Sylvia=s testimonial statement against Crawford, was Asufficient to make out a violation of
the Sixth Amendment@ because he had no opportunity to cross‑examine her.[15]








The Austin Court of Appeals faced
facts and a claim almost identical to the ones in this case in its post-Crawford
decision, Cassidy v. State.[16]  In Cassidy,
a police officer was dispatched to a convenience store where he found emergency
medical personnel treating a clerk for a stab wound to his abdomen and cuts on
his hand.  The officer testified about the bloody crime scene and stated that
two witnesses told him what they had seen and gave him the suspect=s description and license plate
number.[17]  The officer
radioed a request for other officers to be on the lookout for the suspect=s truck.[18] 
The clerk was taken to a hospital where, one hour after the assault, he was
interviewed by the officer who testified that the clerk gave him a description
of his assailant that matched that provided by the two witnesses.  The clerk
also said Athat the man had entered the store and asked to cash a check.  When [the
clerk] refused to cash the check, the man stabbed him.@[19]  The court of appeals, without
elaboration, held that the officer=s hospital interview was not an
interrogation under Crawford, and, therefore, the clerk=s statement was not testimonial.[20]








In evaluating appellant=s claim in the present case, the
court of appeals noted the holding in Cassidy, but ruled the other way.[21] 
The court of appeals explained that, although the Supreme Court declined to
define Atestimonial@ in Crawford, it did set out
categories of statements that definitely qualified as testimonial statements,
including those taken during Apolice interrogation.@[22]  Noting that the Crawford
Court specifically stated that a recorded statement knowingly given in response
to structured police questioning qualifies under any conceivable definition,
the court of appeals concluded Athat a police officer conducting an interview of a witness at
a hospital is such >structured police questioning,=@ and is thus an Ainterrogation@ under Crawford.[23] 


Turning to the facts of this case,
the court of appeals noted that Mr. Norman=s statement was given in response to
investigative questioning by Deputy Figueroa and therefore was testimonial Aas a matter of law.@[24]  Because Mr. Norman did not testify
at trial and appellant had had no prior opportunity for cross‑examination,
the court of appeals concluded that the admission of these out-of-court
statements violated appellant=s right to confrontation.[25] 
However, that court also concluded that this constitutional error was harmless
beyond a reasonable doubt.[26]

                                                                           III.


















In the wake of Crawford,
courts across the nation have grappled with the meaning of Atestimonial@ hearsay.[27] 
Cassidy and Hall are but two of the many cases that have reached
conflicting results about whether hospital statements made to police officers
are testimonial.[28]  In Tyler
v. State,[29] the
Fourteenth Court of Appeals, also faced with the question of whether a
statement made to an officer at a hospital was testimonial, declined to Atake sides@ in the disagreement between Wall
and Cassidy because the circumstances in its case were Afundamentally different from those
encountered in either of these prior opinions.@[30]

In Tyler, the evidence showed
that Vlryn Veal was leaving a bar when he was shot in the abdomen by a man who
initially approached him asking for a light.[31] 
Officer Kirk Milton testified that he was dispatched to the crime scene, which
he quickly secured and handed over to other officers before following Veal=s ambulance to the hospital.  There,
he found Veal being prepared for surgery.  Officer Milton was in uniform; Veal
was still lying on the ambulance gurney, bloody, and apparently in great pain. 
Officer Milton said he Aasked Veal if he was >Mr. Veal,= and without further prompting, Veal
told Milton what had happened to him that night.@  According to Veal, the assailant
pulled a gun on him and asked for his wallet, that he refused, telling the
assailant he would still give him a light; and that when he turned around with
the lighter, the assailant shot him in the stomach.[32] 
AMilton specifically stated that he
just listened to Veal and did not ask questions.  He said that he wanted to get
some initial information regarding the events that had transpired.@[33]  The trial court ruled that Veal=s statements were not testimonial and
were admissible.  The Fourteenth Court of Appeals agreed:








Here, it is undisputed that there was no investigative
questioning of Veal at the time he gave his statement.  Officer Milton asked
Veal if he was >Mr. Veal=;
Milton specifically testified that he asked no further questions and that Veal
simply told him what happened.  Thus, Veal clearly did not give his statement
in response to police interrogation.  The statements were not being recorded in
any manner and were given in a particularly informal setting, while Veal was
being prepared for surgery by hospital staff.  It appears that Veal simply
wanted to let the officer know what happened to aid the start of the
investigation.  Based on these circumstances, we hold that Veal=s statement was not testimonial in nature.[34]

 













This trio of Texas cases, Cassidy,
Wall, and Tyler, illustrate what the First Circuit meant, in United
States v. Brito, when it recently said that A[t]he case law in this nascent field
is muddled as to whether excited utterances may or may not be classified as
testimonial hearsay.@[35]  The Brito court noted that the decisions fall
into three camps, with some courts taking the view that excited utterances
never constitute testimonial hearsay,[36] some courts
concluding that the excited nature of the utterance has no or little bearing on
whether a particular statement is testimonial,[37]
and some courts recognizing Athat the excited utterance inquiry and the testimonial
hearsay inquiry are distinct but symbiotic; the startling event that gives rise
to an excited utterance informs the Confrontation Clause analysis and often
dissipates the very qualities of a statement that otherwise might render the
statement testimonial.@[38]








Cassidy and Wall seem to fall, at
least by implication, into the first and second camps respectively.[39] 
Tyler falls in the third camp, as do most Texas cases,[40]
as well as those from other jurisdictions.

Like many of the Texas courts of
appeals, we too reject any per se or categorical approach.  We agree with the
First Circuit that








the excited utterance and testimonial hearsay
inquiries are separate, but related. While both inquiries look to the
surrounding circumstances to make determinations about the declarant=s mindset at the time of the statement, their focal
points are different.  The excited utterance inquiry focuses on whether the
declarant was under the stress of a startling event.  The testimonial hearsay
inquiry focuses on whether a reasonable declarant, similarly situated (that is,
excited by the stress of a startling event), would have had the capacity to
appreciate the legal ramifications of her statement.

These parallel inquiries require an ad hoc, case‑by‑case
approach.  An inquiring court first should determine whether a particular
hearsay statement qualifies as an excited utterance.  If not, the inquiry
ends.  If, however, the statement so qualifies, the court then must look to the
attendant circumstances and assess the likelihood that a reasonable person
would have either retained or regained the capacity to make a testimonial
statement at the time of the utterance.[41]

 

By way of guidance, the Brito court
noted that generally statements made to police while the declarant (or another
person) is still in personal danger are not made with consideration of their
legal ramifications because the declarant usually speaks out of urgency and a
desire to obtain a prompt response; thus, those statements will not normally be
deemed testimonial.[42]  But after
the immediate danger has dissipated, a person who speaks while still under the
stress of a startling event is more likely to comprehend the larger
significance of his words:  AIf the record fairly supports a finding of comprehension, the
fact that the statement also qualifies as an excited utterance will not alter
its testimonial nature.@[43]








IV.








Although we defer to a trial court=s determination of historical facts
and credibility,  we review a constitutional legal ruling, i.e. whether
a statement is testimonial or non-testimonial, de novo.[44] 
This is particularly so because the legal ruling of whether a statement is
testimonial under Crawford is determined by the standard of an
objectively reasonable declarant standing in the shoes of the actual declarant.[45] 
On that question trial judges are no better equipped than are appellate judges,
and the ruling itself does not depend upon demeanor, credibility, or other
criteria peculiar to personal observation.[46] 
By contrast, appellate courts review a trial court=s determination of whether evidence
is admissible under the excited utterance exception to the hearsay rule only
for an abuse of discretion.[47]  In part,
the distinctive standards of review for hearsay objections and Confrontation
Clause objections to the admission of excited utterances arise because the
hearsay exception depends largely upon the subjective state of mind of the
declarant at the time of the statement, whereas the issue of whether an
out-of-court statement (excited or otherwise) is Atestimonial@ under Crawford depends upon
the perceptions of an objectively reasonable declarant.[48]








In this case, the court of appeals
did not, at least explicitly, consider the effect of Mr. Norman=s statement being an excited
utterance when deciding whether it was testimonial.  The court spent no time
looking to the circumstances or assessing whether a reasonable person in Mr.
Norman=s shoes would have either retained or
regained the capacity to make a testimonial statement and would have been aware
that he was doing so at the time of the utterance.  But the record tells us he
would.  On direct examination, Deputy Figueroa stated that although Mr. Norman
smelt of alcohol and was still in pain, he was able to logically explain what
had happened to him:

Q:        I believe I asked you this earlier, I just
want to clarify.  When you spoke to Mr. Norman, was he able to relay the events
about how he got in that bloody shape in a logical fashion to you?

A:        Yes, ma=am,
he was.

Q:        Based on your training and experienceBI think you told the jury earlier that you had made
many scenes with intoxicated persons in your jobBdo you feel like Mr. Norman was impaired by that, by drinking to the
point he could not relay events from that afternoon to you?

A:        No.

Q:        Did Mr. Norman and Mr. Pierce appear to know
what was happening and where they were?

A:        Yes.

Q:        Did they know they were speaking about the
assault that had happened to them that afternoon?

A:        Yes, ma=am.

Q:        Did Mr. Norman appear to you to still be in
some way physically or emotionally affected by having been assaulted earlier?








A:        Yes, ma=am.

***

Q:        And I mean, based on what you could see, how
they were acting, did they appear to be still affected by that?

A:        Yes, ma=am,
they did.

Q:        Physically or emotionally or both?

A:        I would go with both.

Q:        Did you ask Mr. Norman questions about what
had happened to him?

A:        Yes, ma=am,
I did.

Q:        And was he able to tell you what happened?

A:        Yes, he was.

 

Deputy Figueroa then recited Mr.
Norman=s description and naming of
appellant, and he repeated Mr. Norman=s rendition of appellant=s racially charged statements.  The
conclusion that Mr. Norman was aware that he was being interviewed by Deputy
Figueroa as part of a criminal investigation, and that the deputies came to the
hospital to collect evidence,[49] is
buttressed by five photographs of Mr. Norman admitted at trial.  In State=s exhibits 25 and 29, Mr. Norman is
facing forward, and appears to be looking directly (with his one functioning
eye) at Deputy Willis as the officer photographed him.  In State=s exhibit 27, which was taken from
behind Mr. Norman to show the injury at the back of his head, Deputy Figueroa
is shown standing in uniform, with his badge visible, facing Mr. Norman and
writing in a notebook. 








Under these circumstances we conclude
that a reasonable person in Mr. Norman=s shoes would have either retained or
regained the capacity to make a testimonial statement at the time of the
utterance, and that a reasonable person would have appreciated the fact that
the officers were conducting a criminal investigation and collecting evidence
for a prospective prosecution.  The fact that Mr. Norman=s statement also qualifies as an
excited utterance exception under the Texas hearsay rule does not alter its
testimonial nature.  Because Mr. Norman was not available to testify at trial,
and appellant had no prior opportunity for cross‑examination, the court
of appeals properly held that admission of Mr. Norman=s statement violated appellant=s right to confrontation under the
Sixth Amendment of the United States Constitution.[50]


V.

Finding constitutional error, the
court of appeals then determined that appellant=s conviction need not be reversed
because it concluded, beyond a reasonable doubt, that the error did not
contribute to that conviction:








The State presented three witnesses, each of whom
testified that the defendant, unprovoked, struck several victims with a
club/stick/board.  First, Cinellia Fry testified that while she was stopped at
a red light adjacent to the scene of the crime, she saw appellant grab a stick
and viciously attack several unarmed men.  Second, Jerry Hunter testified that
he was sitting in his car with his family at the McDonald=s across the street from the scene, approximately 100
to 150 feet away.  Hunter stated that he saw some men arguing, and that the
appellant walked over to a pick‑up truck, picked up a club, and attacked
several men.  Finally, Samuel Pierce, one of the victims of the attack and an
acquaintance of appellant, testified that he was assaulted, identified his
attacker as appellant, and stated that he was hit several times with a board.

 

The defense presented three witnesses.  Their
testimony detailed the events after the assault, when they arrived at the
abandoned gas station.  None of the three testified as to what actually occurred
between the victims and appellant.

 

Thus, of the witnesses testifying at trial, those who
actually witnessed the crime testified that appellant was the attacker. 
Moreover, one of those witnesses was an acquaintance of appellant and
identified appellant as the attacker.  The evidence overwhelmingly establishes
appellant=s guilt, even disregarding the erroneously admitted
evidence.  The testimony establishes that appellant intentionally caused
physical contact with another that resulted in serious bodily injury, while
knowing that the victims would regard the contact as offensive or provocative,
as required by the Texas Penal Code. . . .  Accordingly, we hold that the error
committed by the trial court was not harmful, and thus overrule appellant=s second issue.[51]

 








We agree with the result and
reasoning of the court of appeals as far as it goes.  Under Rule 44.2(a) of the
Texas Rules of Appellate Procedure, we must Acalculate, as nearly as possible, the
probable impact of the error on the jury in light of the other evidence.@[52]  If there is a reasonable likelihood
that the error materially affected the jury=s deliberations, then the error is
not harmless beyond a reasonable doubt.[53] 
If an appellate court rules that a constitutional error in the admission of
evidence is harmless, it is, in essence, asserting that the nature of that
evidence is such that it could not have affected the jury=s deliberations or verdict.[54]
 Although the most significant concern is the error and its effect, the
presence of other overwhelming evidence that was properly admitted which
supports the material fact to which the inadmissible evidence was directed may
be an important factor in the evaluation of harm.[55] 
In this case, the evidence of appellant=s guilt was overwhelming and the
out-of-court statement by Mr. Norman added nothing to that evidence nor was it
at all likely to sway a jury from a state of non-persuasion to persuasion of
his guilt.  








The court of appeals did not address
whether Mr. Norman=s out-of-court recital of appellant=s racially charged statement was
harmful to appellant=s punishment.  Perhaps this failure was because appellant
simply asked for a new trial on appeal, and did not specifically request a new
punishment hearing if the court of appeals found that a new trial on guilt was
unwarranted.  Appellant did, however, argue in his supplemental brief to the
court of appeals in light of Crawford v. Washington that the
out-of-court statement was both inflammatory and harmful for purposes of
assessing a proper punishment.  Appellant, both in the court of appeals and
here, argues that Athe punishment phase is the phase in which Mr. Norman=s statements would have had the most
prejudicial effect@ because Athey provide a racially based motive for the assault@ and indicate appellant=s Aracial intolerance and bigotry.@  The State counters that Aappellant=s extensive criminal record, coupled
with the brutal beating that he gave to the three men at the time of the
charged offense, was more than enough to justify the sentence that was assessed
against the appellant.  There is no indication that the appellant=s isolated statements to Mr. Norman
played that large of a role in the jury=s punishment verdict.@  

The court of appeals has not yet
addressed these arguments.  In some situations, the admission of  testimonial
statements that are harmless beyond a reasonable doubt at the guilt stage might
well have a demonstrable impact at the punishment stage.  In other situations,
they likely would have no impact or equal impact at both stages.  We therefore 
remand this case to the court of appeals to decide if the confrontation
violation was harmful during the punishment stage.

 

Delivered:  January 18, 2006

Publish

 

 

 









[1]Wall
v. State, 143 S.W.3d 846 (Tex. App. B
Corpus Christi 2004).





[2]We
granted the State=s
PDR which asked whether the court of appeals Aerred
by holding that the victim=s
statement, which was admitted pursuant to the excited utterance exception to
the hearsay rule, violated appellant=s
federal and state rights to confrontation.@ 
We granted appellant=s
PDR which asked whether the court of appeals erred Ain holding the admission of evidence in
violation of Crawford v. Washington, 124 S.Ct. 1354 (2004) was harmless.@





[3]
See Tex. R. Evid. 803(2),
which reads,  AA
statement relating to a startling event or condition made while the declarant
was under the stress of excitement caused by the event or condition@ is not excluded by the
hearsay rule, regardless of whether the declarant testifies as a witness.

 





[4]
541 U.S. 36 (2004).





[5]
448 U.S. 56 (1980).





[6]
541 U.S. at 63, 67-68.





[7]Id.
at 50, 68.





[8]Id.
at 68.





[9]Id.
at 59-60, 68 (quoting Roberts, 448 U.S. at 66).





[10]Id.
at 68.





[11]Id.
at 51-52 (cites omitted).  Since the Crawford decision, most lower
courts have looked to this third (and broadest) formulation of Atestimonial@ to ensure compliance with
the Confrontation Clause.  The Sixth Circuit, quoting one of the six professors
who had filed an amicus brief in Crawford,  explained:

 

            [This]
broader definition Ais
necessary to ensure that the adjudicative system does not effectively invite
witnesses to testify in informal ways that avoid confrontation.@  The Crawford Court
found the absence of an oath not to be determinative in considering whether a
statement is testimonial. . . . [T]he danger to a defendant might well be
greater if the statement introduced at trial, without a right of confrontation,
is a statement volunteered to police rather than a statement elicited through
formalized  police interrogation.  One can imagine the temptation that someone
who bears a grudge might have to volunteer to police, truthfully or not,
information of the commission of a crime, especially when that person is
assured he will not be subject to confrontation. . . . If the judicial system
only requires cross‑examination when someone has formally served as a
witness against a defendant, then witnesses and those who deal with them will
have every incentive to ensure that testimony is given informally.

 

United States v. Cromer,
389 F.3d 662, 674‑75 (6th Cir. 2004) (internal citations omitted).  Thus,
Awhere an objective
witness reasonably anticipates that a given statement will be used at a later
trial, that statement is likely testimony in the sense that it is offered to
establish or prove a fact. . . . As such, absent unavailability and a prior
opportunity for cross‑examination, it must be subjected to the strictures
of the Confrontation Clause.@ 
United States v. Hinton, 423 F. 3d 355, 360 (3rd Cir. 2005). 
The Second Circuit noted that  Athe
[Crawford] Court would use the reasonable expectation of the declarant
as the anchor of a more concrete definition of testimony.@  United States v. Saget,
377 F.3d 223, 229 (2d Cir. 2004).  And the Tenth Circuit stated, AWe conclude that the >common nucleus= present in the
formulations which the Court considered centers on the reasonable expectations
of the declarant.  It is the reasonable expectation that a statement may be
later used at trial that distinguishes the flippant remark, proffered to a
casual acquaintance . . . from the true testimonial statement.@  United States v.
Summers, 414 F.3d 1287, 1302 (10th Cir. 2005).  In an early
post-Crawford decision, Horton v. Allen, 370 F.3d 75, 83‑84
(1st Cir. 2004), cert denied, 125 S.Ct. 971 (2005), the First Circuit
employed the third, broadest formulation when it held that an accomplice=s private conversation with
an associate was non‑testimonial, in part because it was not made Aunder circumstances in
which an objective person would >reasonably
believe that the statement would be available for use at a later trial.=@ 





[12]Crawford,
541 U.S. at 52.





[13]Id.
at 53.





[14]Id.
n. 4.





[15]Id.
at 68.





[16]
149 S.W.3d 712 (Tex. App.B
Austin 2004, pet. ref=d),
cert. denied, 125 S. Ct. 1648 (2005).





[17]Id.
at 713-14.





[18]Id.
at 714.





[19]Id.





[20]Id.
at 716.





[21]Wall
v. State, 143 S.W.3d at 851.





[22]Id.





[23]Id.





[24]Id.





[25]Id.





[26]Id.
at 852-53.





[27]
We note that the Supreme Court recently granted certiorari in two post-Crawford
cases, Hammon v. State, 829 N.E.2d 444 (Ind. 2005), cert. granted,
2005 U.S. LEXIS 7860 (U.S. Oct. 31, 2005), and State v. Davis, 111 P.3d
844 (Wash. 2005), cert. granted, 2005 U.S. LEXIS 7859 (U.S. Oct. 31,
2005), presumably to refine its definition of Atestimonial@ and to provide greater
guidance to the bench and bar concerning the scope of Crawford=s reach.





[28]See,
for example, the following casesBall
addressing whether statements made during hospital police interviews are
testimonial:

*          People
v. Cage, 15 Cal. Rptr. 3d 846, 856-57 (Ct. App. 2004), review granted,
19 Cal. Rptr.3d 824 (Cal. 2004) (not testimonial; AWe cannot believe that the framers would have
seen a >striking
resemblance= between
[deputy=s interview of
victim] at the hospital and a justice of the peace=s pretrial examination.  There was no
particular formality to the proceedings.  [The deputy] was still trying to
determine whether a crime had been committed and, if so, by whom.  No suspect
was under arrest; no trial was contemplated. [The deputy] did not summon
[victim] to a courtroom or a station house; he sought him out, at a neutral,
public place.  There was no Astructured
questioning,@ just an
open‑ended invitation for [victim] to tell his  story.  The interview was
not recorded.  There is no evidence that [the deputy] even so much as recorded
it later in a police report.  Police questioning is not necessarily police
interrogation.  When people refer to a >police
interrogation,=
however colloquially, they have in mind something far more formal and focused.@);

*          People
v. King, 121 P.3d 234, 240 (Colo. Ct. App. 2005, writ denied) (not
testimonial; noting that officer Aarrived
upon the scene to find the victim bleeding from her neck.  She applied pressure
to the wound, and it was necessary for her to ride in the ambulance with the
victim to continue to apply pressure to stop the bleeding.  Although [the
officer] remained at the hospital with the victim for about two hours, P.T. was
still distressed by the assault and was in a substantial amount of pain from
her injuries.  P.T.=s
statements were not made in a formal setting such as a police station.  Nor
were the statements elicited by [the officer] in a deliberate manner to obtain
incriminating evidence against defendant. . . . The seriousness of P.T.=s injuries supports the
nontestimonial nature of the statement because under such pain and distress, it
is highly unlikely that P.T. or any reasonable person would make any statement
with the expectation that it would subsequently be used prosecutorially@);

*          People
v. West, 823 N.E.2d 82, 88 (Ill. App. Ct. 2005, appeal pending)
(testimonial; noting that Aat
the time M.M. was questioned at the hospital, the defendant was already in
custody and the officers possessed some knowledge of his alleged involvement in
the assault.  Their questioning of M.M. was conducted for the purpose of
further investigating the defendant=s
involvement and to gather evidence for use in a criminal prosecution. 
Accordingly, the officers asked specific, purposeful questions and were in turn
provided with detailed descriptions of the events that transpired and the
defendant=s
involvement.  These investigative, evidence‑producing actions bore
statements which, if used to convict the defendant, would implicate the central
concerns underlying the confrontation clause.@);

*          State
v. Nix, 2004 Ohio 5502, P77 (Ohio Ct. App. 2004) (not testimonial; stating
that when officers questioned assault victim at hospital, he was not a suspect
and not Aunder any
form of custody that would have led to Miranda warnings and the type of >structured questioning= sufficient to be called a
police >interrogation,=@ but noting Athat
some courts have taken a very broad view of Crawford, observing that the
Supreme Court=s
rationale suggests that the determinative factor of >whether a declarant bears testimony=is the declarant=s expectation that his or
her statements may later be used at a trial.= 
. . .  If this were the test, then [victim=s
statements to officer] during both in‑hospital interviews would be
testimonial under Crawford, as certainly [victim] must have known that
his statements may have been used in any subsequent trial of the man who had
shot him.  The problem with such a broad definition, as we see it, is that it
would render >testimonial= anything said to a police
officer involved in investigating a crime@);

*          People
v. Qiang Wang, 2004 Cal. App. Unpub. LEXIS 11664, *9-10 (Cal App. 2004)
(testimonial; officers, wearing their uniforms and carrying their weapons, came
into the emergency room to question victim about domestic violence she had
reported, gave her a form explaining option of keeping her identity
confidential, and interviewed her for 25 to 30 minutes, during which they
obtained information about her relationship with defendant and his prior abuse;
concluding that victim=s
statement was Atestimonial@ under Crawford A having been obtained by
officers operating in their investigative capacity for the purpose of producing
evidence in anticipation of a potential criminal prosecution@);

*          People
v. Herring, 2005 Cal. App. Unpub. LEXIS 3748, *40 (Cal. App. 2005)
(testimonial; victim=s
statement to police officer at hospital made after Ashe had been removed from the crime scene, and
the police had secured the area and had an opportunity to assess and resolve
any other exigent matters@;
officer Awas aware of
the nature of the alleged crimes and the identity of the likely assailant
[which enabled him] to conduct more purposeful and focused questioning [and to
ask ] about incidents of prior abuse by the same assailant@; concluding that officer Awas acting in an
investigatory capacity to produce evidence in anticipation of a potential
criminal prosecution@);

$                  
People v. Lennon, 2005 Cal. App. Unpub. LEXIS 3750, *38‑39
(Cal. App. 2005) (not testimonial; assault victim was Anot an accuser who made a >formal statement to
government officers.=
. . . The statements were not even made in anticipation of trial, so as to fit
into the broadest category of testimonial statements suggested by Crawford,
i.e.: >statements
that were made under circumstances which would lead an objective witness
reasonably to believe that the statement would be available for use at a later
trial.= . . . The
statements were made in a hospital a little over a half hour after the
stabbing, in a situation where [victim=s]
only concern was the life of her grandson@).





[29]167
S.W.3d 550 (Tex. App.BHouston
[14th Dist.] 2005, pet. filed).





[30]Id.
at 554.





[31]Id.
at 552.





[32]Id.





[33]Id.





[34]Id.
at 554 (citations omitted).





[35]United
States v. Brito, 427 F.3d 53, 60 (1st Cir. 2005). 





[36]Brito,
427 F.3d at 60.  In Key v. State, 173 S.W.3d 72 (Tex. App.BTyler 2005, pet. ref=d), the Tyler Court of
Appeals concluded as much and held that the underlying rationale of an excited
utterance supports a determination that such statements are not testimonial in
nature.  AIt is
consistent with the definition of an excited utterance to conclude that it is
not a statement that has been made in contemplation of its use in a future
trial.@  Id at
76.  The State urges us to conclude, as did the Tyler court, that all excited
utterances are nontestimonial as a matter of law.  Although this position has
support in some cases from other jurisdictions, it is a minority position, and
the proportion of cases that espouse this view is shrinking by the day.  One of
the cases Key and the State here rely on, Hammon v. State, 809
N.E.2d 945, 952 (Ind. Ct. App. 2004), in which the Indiana Court of Appeals
stated Athat the very
concept of an >excited
utterance= is such
that it is difficult to perceive how such a statement could ever be >testimonial,=@ was superceded in part on further review.  Hammon
v. State, 829 N.E.2d 444 (Ind. 2005).  The Indiana Supreme Court distanced
itself from the court of appeals=s
bright line:            [W]e agree with the Court of Appeals in its view that
responses to initial inquiries at a crime scene are typically not Atestimonial.@  We do not agree, however,
that a statement that qualifies as an Aexcited
utterance@ is
necessarily nontestimonial. The Court of Appeals is likely correct that the
declarant of an excited utterance will ordinarily lack the requisite motive
because the heat of the moment makes it unlikely that the declarant is focusing
on preservation rather than communication of information. But an interrogating
officer may be so motivated. Thus, the Astructured
questioning@
identified by some courts as an indicium of a testimonial statement may be best
understood as evidence of a purpose to elicit testimonial statements. 

Id. at 453.  As noted
above, the Supreme Court recently granted certiorari in Hammon.  See
note 27 supra.





[37]Brito,
427 F.3d at 60.  Some courts look, for example, to the police officer=s state of mind.  In State
v. Lewis, 619 S.E.2d 830 (N.C. 2005), the North Carolina Supreme Court held
that a police officer=s
role in gathering information is a key factor to be considered by a court in
determining whether the declarant=s
statements are testimonial:

structured police questioning is a key
consideration in determining whether a statement is or is not testimonial. 
Structured police questioning or interrogation does not occur exclusively in a
police station . . . . The questioning might also occur  in a field location,
detention facility, or the North Carolina Department of Correction.  This
questioning is in contrast to the initial gathering of information and
determination of whether a crime was actually committed.  Whether structured
police questioning is present may also depend on the status of the
investigation, as evidenced by the role of the officer(s) asking questions of
the declarant.  This distinction is an important one, because the statements
made as a result of a patrol officer=s
preliminary questioning will likely be nontestimonial, while statements
resulting from investigators=
questions, which are made at a later point in time, will likely be
testimonial.  The point at which questioning becomes Astructured police questioning@ is analogous to the line
crossed when police involvement changes from mere presence to effecting a
seizure of a person, or when police questioning takes a form requiring Miranda
rights to be read.  So too a line is crossed when police questioning shifts
from mere preliminary fact‑gathering to eliciting statements for use at a
subsequent trial.  When this line is crossed, any statements elicited are
testimonial in nature.

619 S.E.2d at 842 (citations
omitted).  The court cautioned however, that the police officer=s role was not
determinative in deciding if a statement is testimonial, rather the Adeterminative factor is the
particular status or stage of the investigation; when the investigation goes
beyond preliminary fact‑gathering, the investigation will tend to become
structured police questioning and will likely produce testimonial statements.  The
role of the officer is merely a factor to be considered in determining the
stage of the investigation.@ 
Id.  See also Hammon, 829 N.E.2d at 455 (citing United
States v. Mikos, 2004 U.S. Dist. LEXIS 13650, * 17-18 (N.D. Ill. July 16,
2004)) (ADepartment of
Health and Human Services agents interviewed  a victim of a doctor under
investigation.  >HHS
Agents interviewed Brannon as part of a formal healthcare fraud investigation.
Their purpose was to gather information for potential use against Mikos at
trial, thus, the Court finds that Brannon=s
statements to the HHS Agents fall within the realm of testimonial statements.=@), United States v. Saner, 313 F. Supp.
2d 896, 901‑02 (S.D. Ind. 2004) (Aa
target=s ex parte
statements to a prosecutor who visited the target=s
home were testimonial because the prosecutor was procuring these statements >with an eye toward trial=@), and People v. Kilday,  123 Cal. App.
4th 406, 422, 20 Cal. Rptr. 3d 161, 174 (2004), review granted, 105 P.3d
114 (Cal. 2005) (AThe
determination whether a statement obtained through police questioning in the
field is testimonial requires a case‑specific, fact‑based inquiry. 
Under Crawford, this inquiry must center around whether the officer
involved was acting in an investigative capacity to produce evidence in
anticipation of a potential criminal prosecution.@).





[38]Brito,
427 F.3d at 60-61.





[39]See
Major Robert W. Best, To Be or Not to Be Testimonial? That is the Question,
2005 Army Law. 65, 84-86 (April
2005), noting that in Cassidy v. State, Athe
characterization of the statement as an excited utterance (a characterization
not disputed by Cassidy) seemed to carry the day@
while in Wall v. State, a case Avirtually
identical to Cassidy . . . . [t]he trial court=s conclusion that the statement was an excited
utterance, did not figure into the court=s
analysis.@





[40]
In Davis v State, 169 S.W.3d 660 (Tex. App. B Austin 2005, no pet. h.), the court of
appeals surveyed the Texas decisions, acknowledged that a number of other
courts had suggested that excited utterances could not be testimonial because
their distinguishing character as spontaneous outbursts made under emotional
distress, without deliberation or premeditation, bore little resemblance to Crawford=s conception of statements
elicited through formal, structured, police interrogation, but rejected a
categorical rule that evidence admissible as an excited utterance is Aipso facto nontestimonial
hearsay outside the scope of the Confrontation Clause and admissible into evidence@ and instead held that A[e]ach case must be
examined on its facts to determine if the evidence is testimonial and
controlled by Crawford.@ 
Id. at 668-72.

In Spencer v. State, 162
S.W.3d 877 (Tex. App.B
Houston [14th Dist.] 2005, pet. ref=d).
the court of appeals held that

the fact that a statement is an excited
utterance is a factor that can be considered when determining whether the
statement is testimonial.  However, we note that Texas courts have held that a
declarant=s state of
excitement can last long after the initial crime and that excited utterances
can be made both spontaneously and in response to questioning . . . . It is not
unreasonable to imagine a situation in which officers secure a scene and then
begin formal, structured questioning of witnesses (or the victim) who are still
under the stress of the situation.  We are not convinced that responses to
questions under such circumstances would be nontestimonial.  Each situation
should be analyzed individually . . . .  Accordingly, we decline to join those
courts that have established a bright‑line rule that excited utterances
can never be testimonial.

Id. at 881.  The Texarkana Court of Appeals agreed
with the Spencer and Davis approach of analyzing the testimonial
nature of a statement independently from its admissibility under the Texas
Rules of Evidence in Moore v. State, 169 S.W.3d 467, 473-74 (Tex. App.BTexarkana 2005, no pet.
h.).  So too has the Dallas Court of Appeals rejected any per se approach:

We understand the State=s position to be that, by
definition, an excited utterance is not made under circumstances conducive to
subjective contemplation of future legal proceedings.  We cannot agree. 
Moreover, even if we were to assume the State is correct in such premise, we
nevertheless conclude, based on Crawford itself, that subjective
contemplation is irrelevant to an analysis of whether such out‑of‑court
statements would be testimonial or non‑testimonial.  First, the test set
out in Crawford is objective, not subjective.  Second, even if the test
were subjective, the declarant=s
perception could be determined only through cross‑examination.  Crawford
identifies as testimonial Astatements
that were made under circumstances which would lead an objective witness
reasonably to believe that the statement would be available for use at a later
trial.@  And, in
criticizing the application of the Roberts reliability test, the Court
stated,

the Framers would
be astounded to learn that ex parte testimony could be admitted against a
criminal defendant because it was elicited by >neutral= government officers.  But
even if the court=s
assessment of the officer=s
motives was accurate, it says nothing about Sylvia=s perception of her situation.  Only cross‑examination
could reveal that.                    

Thus, even if the test were subjective,
under Crawford, only cross‑examination could reveal the
complainant=s
subjective perception of her situation. 

Mason v. State, 173
S.W.3d 105, 110 (Tex. App.BDallas
2005, pet. dism=d)
(citations omitted).





[41]
Brito, 427 F.3d at 61-62. 





[42]Id.
at 62.  See also Spencer v. State, 162 S.W.3d at 882 (collecting cases
from Texas and other jurisdictions holding, generally, that preliminary
questions by police at the scene of a crime while police are assessing and
securing the scene are not testimonial).





[43]Brito,
427 F.3d at 62.





[44]
See, e.g., Lilly v. Virginia, 527 U.S. 116, 137 (1999) (when reviewing
the admissibility of out-of-court statements over a Confrontation Clause
objection, courts should independently review whether the evidence satisfies
the demands of the Constitution); United States v. Rondeau, 430 F.3d 44,
47 (1st Cir. 2005) (asserted Crawford constitutional error is
reviewed under de novo standard); United States v. Cervantes-Flores,
421 F.3d 825, 831 (9th Cir. 2005) (same); United States v. Brun,
416 F.3d 703, 706 (8th Cir. 2005) (same); United States v.
Summers, 414 F.3d 1287, 1298 (10th Cir. 2005) (same); United
States v. Delgado, 401 F.3d 290, 299 (5th Cir. 2005) (same);
Lagunas v. State, ___ S.W.3d __, __, 2005 Tex. App. LEXIS 6957, *26 (Tex.
App.BAustin 2005, no.
pet. h.) (same); Davis v. State, 169 S.W.3d 660, 665 (Tex. App.BAustin 2005, no. pet. h.)
(same).                   





[45]
See Crawford, 541 U.S. at 52 (setting out one definition of Atestimonial@ statements as those A>statements that were made under
circumstances which would lead an objective witness reasonably to believe that
the statement would be available for use at a later trial=@) (citation omitted); United States v.
Cromer, 389 F.3d 662, 675 (6th Cir. 2004) (stating that the
decisive inquiry under Confrontation Clause objection to hearsay is Awhether a reasonable person
in the declarant=s
position would anticipate his statement being used against the accused in
investigating and prosecuting the crime@).





[46]
See, e.g., Lilly, 527 U.S. 116, 136-37 (1999) (stating that appellate
courts defer to trial court determinations of whether evidence is admissible
under hearsay rules, but when that evidence is objected to as violative of the
Confrontation Clause, A>independent review is .
. . necessary . . . to maintain control of, and to clarify, the legal
principles= governing
the factual circumstances necessary to satisfy the protections of the Bill of
Rights@) (quoting Ornelas
v. United States, 517 U.S. 690, 697 (1996)).  The Supreme Court explained
why deference to trial court assessments is inappropriate when the issue is
whether evidence offered under a hearsay exception meets the requirements of
the Confrontation Clause:

We, of course, accept the Virginia
courts= determination
that Mark=s statements
were reliable for purposes of state hearsay law, and, as should any appellate
court, we review the presence or absence of historical facts for clear error. 
But the surrounding circumstances relevant to a Sixth Amendment admissibility
determination do not include the declarant=s
in-court demeanor (otherwise the declarant would be testifying) or any other
factor uniquely suited to the province of trial courts.  For these reasons,
when deciding whether the admission of a declarant=s out-of-court statements violates the
Confrontation Clause, courts should independently review whether the government=s proffered guarantees of
trustworthiness satisfy the demands of the Clause.

Id. at 136-37;  see
also Kothe v. State, 152 S.W.3d 54, 62-63 (Tex. Crim. App. 2004) (question
of whether police officer=s
conduct is objectively Areasonable@ under Fourth Amendment is
a question of constitutional law and is reviewed de novo); Garcia v.
State, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001) (noting that Awe give almost total
deference to the trial court in determining what the actual facts are, and then
we review de novo whether those facts are sufficient to give rise to
reasonable suspicion@).





[47]
See Zuliani v. State, 97 S.W.3d 589, 595-96 (Tex. Crim. App. 2003) (AThe admissibility of an
out-of-court statement under the exceptions to the general hearsay exclusion
rule is within the trial court=s
discretion@; trial
court did not abuse its discretion in finding that declarant was A>still dominated by the emotions,
excitement, fear, or pain of the event=
or condition at the time of the statement@).





[48]
See Lilly, 527 U.S. at 137; Brito, 427 F.3d at 61 (noting that A[t]he excited utterance
inquiry focuses on whether the declarant was under the stress of a startling
event.  The testimonial hearsay inquiry focuses on whether a reasonable
declarant, similarly situated (that is, excited by the stress of a startling
event), would have had the capacity to appreciate the legal ramifications of
her statement@); see
also  United States v. Brun, 416 F.3d 703, 706 (8th Cir. 2005)
(noting that appellate courts review trial courts=
rulings on the admissibility of hearsay evidence for an abuse of discretion but
review Confrontation Clause objections to admission of evidence under Crawford
de novo); United States v. Sager, 377 F.3d 223, 230-31 (2d Cir.
2004) (reviewing admissibility of out-of-court statement for abuse of
discretion under hearsay rule, but de novo for Confrontation Clause analysis).





[49]When
Deputy Figueroa was asked why he went to the hospital to interview the two
complaining witnesses he responded,  ATo
get the facts, to try to gather up all the information, what one is saying,
what another is saying, is it consistent, does it sound right or true or
possible, does the evidence go that way.  And basically, get to the bottom
line, what exactly happened, why did it happen.  That way when we document it,
it=s clear cut.@  Similarly, Deputy Willis
said that his job was to take photographs and collect evidence.  We find the
officers=
investigatory state of mind relevant, however, only to the extent that it is
communicated or apparent to the declarant.  See note 37 supra.





[50]Wall,
143 S.W.3d at 851.





[51]143
S.W.3d at 852‑53.





[52]
McCarthy v. State, 65 S.W.3d 47, 55 (Tex. Crim. App. 2001); Wesbrook
v. State, 29 S.W.3d 103, 119 (Tex. Crim. App. 2000).





[53]
See Chapman v. California, 386 U.S. 18, 23-24 (1967) (in addressing whether
constitutional error is harmless, the critical inquiry is whether the error may
have contributed to appellant=s conviction or punishment; the standard of review Arequir[es] the beneficiary of a constitutional error to prove beyond a
reasonable doubt that the error complained of did not contribute to the verdict
obtained@); Yates v. Evatt, 500 U.S. 391, 403 (1991) (ATo say that an error did not contribute to the verdict is . . . to find
that error unimportant in relation to everything else the jury considered on
the issue in question, as revealed in the record@); Sullivan
v. Louisiana, 508 U.S. 275, 279 (1993) (the issue under Chapman is Awhether the . . .verdict
actually rendered in this trial was surely unattributable to the error@).





[54]
Chapman, 386 U.S. at 24.





[55]
See Wesbrook, 29 S.W.3d at 119.